UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                 - against -                 16 CR 436 (KMW)

WILLIAMS, et al.,
                Defendant.
------------------------------------------------------------------x

**DEFENDANT GERALD SEPPALA'S REPLY TO THE GOVERNMENT'S
OPPOSITION TO HIS MOTION TO SUPPRESS**

ANNALISA MIRÓN, ESQ.
IAN MARCUS AMELKIN, ESQ.
Federal Defenders of New York, Inc.
Attorneys for Defendant
**Gerald Seppala**
52 Duane Street - 10th Floor
New York NY 10007
Tel.: (212) 417-8780

TO:   JOON H. KIM, ESQ.
      Acting United States Attorney
      Southern District of New York
      One Saint Andrew's Plaza
      New York, NY 10007
      Attention: Patrick Egan, Esq.
      Assistant United States Attorney

## PRELIMINARY STATEMENT

Defendant Gerald Seppala respectfully submits this Reply Memorandum of Law in response to the Government's opposition to his Motion to Suppress that he filed on May 10, 2017.  In its opposition brief, the Government concedes that the final two hours and ten minutes of Mr. Seppala's videotaped interrogation should not be introduced as evidence in this case because Mr. Seppala invoked his right for counsel to be present during his interrogation when he stated, "Here's what I want to do.  I want to cooperate with you, but I am not a lawyer.  I need some advice from a lawyer to cooperate with you fully."  Gov't Opp. at 6; *see also* Def. Mot. to Suppress, ECF No. 66 (May 10, 2017), Def. Ex. B at 20:25; Exs. B–H.  As a result, all of Mr. Seppala's statements following this invocation of his right to counsel should be suppressed.

Accounting for the Government's concession, the Court must still determine (1) whether Mr. Seppala unequivocally invoked his right to counsel prior to the law enforcement agents reading him his *Miranda* rights when he stated, "Do I have an opportunity to call an attorney?" (Ex. A at 9:05); (2) if not, whether Mr. Seppala unequivocally invoked his right to counsel when he asked, "When can I call a lawyer because we are not making progress?" (Ex. B at 10:07); (3) whether Mr. Seppala waived his right to counsel when he continued to speak with the agents after signing a *Miranda* rights waiver form; and (4) whether the evidence seized from Mr. Seppala's electronic devices should be suppressed as the fruit of an unlawfully obtained statement.  *See* Ex. C at 9:20.

For the reasons stated in Mr. Seppala's main Memorandum of Law and below, the entirety of Mr. Seppala's post-arrest statement should be suppressed because he was unconstitutionally interrogated after unequivocally invoking both his Fifth and Sixth Amendment rights to counsel.  Alternatively, Mr. Seppala requests that the Court suppress an additional ten minutes of his statement beyond the two hours and ten minutes that the Government concedes is inadmissible, from the moment he asked the lead agent, "When Can I call a lawyer because we are not making progress?" Ex. B at 10:07.  Finally, Mr. Seppala requests an Order suppressing evidence discovered on the electronic devices found in his home.  As to this issue, at the very least, the Court should order a hearing to determine whether the agents could still have accessed Mr. Seppala's devices without his having provided them with his passwords.

## ARGUMENT

A.  MR. SEPPALA UNEQUIVOCALLY INVOKED HIS RIGHT TO COUNSEL PRIOR TO BEING READ HIS *MIRANDA* RIGHTS

The Government has failed to meet its burden of proving that Mr. Seppala's statement is admissible.  *See generally Brown v. Illinois,* 422 U.S. 590, 604 (1975) (the Government has the burden to prove a post-arrest statement is admissible).

At the time agents arrested Gerald Seppala in his Minnesota home on June 28, 2016, he was indicted in the Southern District of New York.  Gov't Opp at 2; *United States v. Williams, et al*, 16-cr-0436 (KMW), ECF No. 1 (indictment filed June 22, 2106).  As such, his Sixth Amendment right to counsel had already attached before he was interrogated.  *Massiah v. United* States, 377 U.S. 201, 206 (1964); *Montejo v.*

*Louisiana*, 556 U.S. 778, 785 (2009) ("[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings.  Interrogation by the State is such a stage.") (internal citations omitted).  Mr. Seppala also maintained his Fifth Amendment right to counsel to be present during custodial interrogation, as detailed in the *Miranda* warnings.  *Id.* at 797–98 (remanding for petitioner to pursue his suppression claims under *both* the Fifth Amendment's *Edwards v. Arizona* rule and the Sixth Amendment).[1]

Although as a "general matter . . . an accused who is admonished with the [*Miranda*] warnings . . . has been sufficiently apprised of the nature of his Sixth Amendment rights," *Patterson v. Illinois*, 487 U.S., 285, 296 (1988), the Supreme Court has recognized that "because the Sixth Amendment's protection of the attorney-client relationship . . . ***extends beyond Miranda's protection*** of the Fifth Amendment right to counsel, . . . there will be cases where a waiver which would be valid under *Miranda* will not suffice for Sixth Amendment purposes," *Id.* at 297, n.9 (emphasis added).[2]  Although this may be such a case, the Court need not reach such a conclusion here.  Even under the *Edwards* rule, Mr. Seppala unequivocally invoked

---

[1] Once an accused "expressed his desire to deal with the police only through counsel," he should not have been "subject[ed] to further interrogation by the authorities until counsel ha[d] been made available to him."  *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).

[2] *See also Montejo*, 556 U.S. at 813–14 (Stevens, J., dissenting) (*Miranda* warnings are insufficient to explain to an unrepresented, yet indicted, accused person of his Sixth Amendment right to representation and legal advice at all critical stages of criminal proceedings).

his right to counsel when he stated:  "Do I have an opportunity to call an attorney?"  Ex. A at 9:05.   Therefore, the entirety of his post-arrest and post-indictment statement should be suppressed.

The Government argues that Mr. Seppala's request did not rise to an unequivocal invocation because he merely asked to "speak with an attorney at some unspecified time in the future."  Gov't Opp. at 12.  However, this argument ignores the relevant case law and the common sense understanding of Mr. Seppala's words.  As discussed in detail in Mr. Seppala's main brief, to invoke the right to counsel during an interrogation, he was required only to make some "statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney."  *McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991).  This Court must take his words "as ordinary people would understand them," *Connecticut v. Barrett,* 479 U.S. 523, 529 (1987), and "[r]esolv[e] any doubts in favor of the conclusion that [he] did not intend any waiver of his right to consult counsel,*" United States v. Quiroz*, 13 F.3d 505,511 (2d Cir. 1993) (*abrogated on other grounds by United States v. Plugh*, 648 F.3d 118 (2d Cir. 2011).  An invocation need not be "forcefully made," and our Circuit does not require "criminal defendants to speak with the discrimination of an Oxford don in order to invoke."  *Wood v. Ercole*, 644 F.3d 83, 92 (2d Cir. 2011) (internal quotation marks omitted).

In its opposition, the Government relies heavily on *Davis v. United States*, 512 U.S. 452, 453 (1994), to argue that Mr. Seppala's invocation was "ambiguous or equivocal," but *Davis* supports Mr. Seppala's—and not the Government's—position.

In *Davis*, the Supreme Court held that the statement "Maybe I should talk to a lawyer" was not an unequivocal invocation.  *Id.* at 462.  Flowing from this decision, statements such as "I am not sure if I should be talking to you;" "I don't know if I need a lawyer;" and "Do you think I need a lawyer?" have been found wanting.  *Plugh*, 648 F.3d at 125–27; *Diaz v. Senkowski*, 76 F.3d 61, 64 (1996). Mr. Seppala's statement of "Do I have an opportunity to call an attorney?" lacks the "internal debate" of these invocations, *Wood*, 644 F.3d at 91, and is far more similar in nature to statements found to be unequivocal by other courts, *see, e.g., United States v. Lee*, 414 F,3d 622, 626 (7th Cir. 2005) ("Can I have a lawyer?"; "I think I should call my lawyer;" Can I talk to a lawyer?"; and "I have to get me a good lawyer, man.  Can I make a phone call?" are each unequivocal invocations of the right to counsel).

Asking for the "opportunity to call a lawyer" is a direct question that agents should have easily understood to mean that Mr. Seppala wanted a lawyer immediately, not in some distant future.  There is no meaningful difference between "do I have an opportunity to call an attorney?" and "Can I talk to a lawyer?" other than Mr. Seppala's polite Minnesota-style of speaking.  *See id.*  Mr. Seppala was handcuffed and under arrest (for the first time in his life), and he watched as multiple federal agents began to search his home.  Ex. A; Seppala Decl. ¶ 16.  Faced with this situation, he asked to be represented by counsel, which is his right under the Fifth and Sixth Amendments of the Constitution.  Mr. Seppala did not ask "whether" he needed counsel; he did not say he "might" want counsel; nor did he say he wanted counsel, but in the future, as the defendant did in *United States v. Lights*, 208 F.

Supp. 3d 568 (S.D.N.Y. 2016) (Sweet, J.).  In *Lights*, when the defendant asked to call a lawyer, the agent stopped questioning and offered him a meaningful opportunity to make a call.  *Lights*, 208 F. Supp. 3d at 572 (when asked "can I call a lawyer?" the detective replied, "of course you can and told the defendant, "if you want to call him, we can call him").  Mr. Lights declined, stating that he would not call a lawyer "yet" because he knew he could "refuse" to answer questions at any time.  *Id.*  That is not what happened here:  the agents never offered Mr. Seppala an opportunity to call counsel, nor did Mr. Seppala make any statement clarifying that he wanted counsel, but only at some future moment.  *See* Ex. A at 9:06–21:26.  Therefore, the Court should hold that Mr. Seppala invoked his right to counsel prior the start of the interrogation, and for the reasons discussed in his main brief, Mr. Seppala's entire post-indictment statement should be suppressed.

B. IN THE ALTERNATIVE, MR. SEPPALA UNEQUIVOCALLY INVOKED HIS RIGHT TO COUNSEL WHEN HE STATED, "WHEN CAN I CALL A LAWYER BECAUSE WE ARE NOT MAKING PROGRESS?"

Should the Court determine that Mr. Seppala did not unequivocally invoke his right to counsel prior to being read his *Miranda* rights, then the Court should suppress all of Mr. Seppala's statements from the moment he said, "When can I call a lawyer because we are not making progress?"  Ex. B. at 10:07.  Seeing as the Government concedes that it will not introduce evidence after timestamp 20:25 in Exhibit B, this would suppress an additional ten minutes and eighteen seconds of Mr. Seppala's videotaped interrogation.  *See* Ex. B at 10:07–20:25.  It is hard to fathom how the statement, "When can I call a lawyer because we are not making progress?" can be

considered anything other than an unequivocal invocation, especially given the context of when Mr. Seppala said it.  Mr. Seppala invoked for the second time directly after the lead agent challenged Mr. Seppala over whether certain financial documents were forged, and Mr. Seppala stood firm in his belief that the documents were authentic.  *See* Ex. B at 7:40–10:07.

This invocation, which came in direct response to aggressive interrogation, was not ambivalent, equivocal, or lacking in "clarity" as the Government suggests.  Gov't Opp. at 11.  Instead, it is a clear, unequivocal expression of Mr. Seppala's desire to end questioning and seek the advice of counsel under both the *Edwards* rule and the Sixth Amendment.  But the agents did not stop questioning, as they were required to under *Edwards*, but instead redirected the conversation back to the interrogation and their investigation.  *Edwards*, 451 U.S. at 484–85; Ex. B at 10:10–11:00 (The lead agent: "You can stop . . . answer as many . . . , or none of the questions, and . . . I am not getting you to do anything except be completely honest."  The other agent:  "Why don't you explain then the context of that email?").  Should the Court not suppress the entire statement, all of Mr. Seppala's statements following this second invocation should be suppressed for the same common sense legal reasons discussed above as to the first statement.

## C.  Mr. Seppala Did Not Waive His Fifth or Sixth Amendment Rights to Counsel

The Government suggests that Mr. Seppala waived his *Miranda* rights because he continued to speak with the agents after he signed *Miranda* waiver.  *See* Gov't Opp. at 10–11.  To establish a knowing waiver, the Government must prove

that Mr. Seppala actually understood the rights he was giving up and that the waiver was not obtained through intimidation, coercion or deception. *See, e.g., United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citations omitted). The Government fails to meet their burden because Mr. Seppala was routinely intimidated and coerced throughout the multi-hour interrogation.

Mr. Seppala had no prior experience with the criminal justice system. Seppala Decl. ¶ 16. After reading Mr. Seppala his *Miranda* rights, the lead agent launched into a speech about importance of cooperating with the agents, without offering Mr. Seppala an opportunity to act on his invocation of his right to counsel. *See, e.g.,* Ex. A at 13:45 ("[I]t is important that you understand that the decisions you make right now, in this moment, are going to impact the rest of your life."); *id.* at 14:20 ("[T]he justice system treats people who make good decisions differently than those who don't."); *id.* at 21:20 ("[H]onesty is really the only thing that can help you out at this point."). This focus on cooperation amounts to badgering when, like here, Mr. Seppala already requested counsel. *See Smith v. Illinois*, 469 U.S. 91, 98 (1984) (The purpose of *Edwards* is to protect an accused from "'badgering or overreaching" that "might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.") (internal quotation marks omitted). Yet, throughout the interrogation, the agents never honored Mr. Seppala's many requests for counsel or offered him an opportunity to call an attorney.

Because of the agents' coercive badgering, the Government cannot establish Mr. Seppala knowingly and voluntarily waived his *Miranda* rights.

D. THE FRUITS OF MR. SEPPALA'S POST-ARREST STATEMENTS SHOULD BE SUPPRESSED.

The Government concedes that Mr. Seppala provided the passwords to his electronic devices **after** he invoked his right to counsel. *See* Gov't Opp. at 14; Ex. C. at 9:20. The Court should exclude the evidence found on the devices because it was obtained in violation of Mr. Seppala's Constitutional rights. The Government argues suppression is not warranted because (1) the agents had a warrant to search the devices; (2) a violation of *Miranda* does not allow for the exclusion of physical evidence uncovered as a result of an improperly obtained statement; and (3) the materials on the devices would have been discovered by the agents anyway. Gov't Opp. at 14–17. These arguments lack merit, and the Court should grant suppression. At the very least, the Court should order a hearing on whether the agents could have obtained the materials from Mr. Seppala's devices without the benefit of his passwords.

First, just because the agents may have complied with the Fourth Amendment of the Constitution in conducting their search, does not mean that they complied with either the Fifth or the Sixth. Mr. Seppala does not challenge the validity of the search warrant the agents possessed when they entered his home, but the warrant did not extend to force Mr. Seppala to answer the agents' questions, especially after he invoked his Fifth and Sixth Amendment rights to counsel. As such, the remedy Mr. Seppala seeks does not arise from the Fourth Amendment's search and seizure doctrine, but rather the Fifth and Sixth Amendments' rights to counsel.

It is far from settled "black-letter law," as the Government suggests, that the Fifth Amendment does not allow for suppression of physical evidence obtained as a

result of a *Miranda* violation.  *See* Gov't Opp. at 16.  The lead case the Government relies on, *United States v. Patane*, 542 U.S. 630 (2004), is a plurality decision that is easy distinguishable.  *Patane*, much like *Oregon v. Elstad*, 470 U.S. 298 (1985), which the plurality in *Patane* relies, did not involve an unequivocal invocation of counsel, but the failure to give proper *Miranda* warnings.  *See Patane*, 542 U.S. at 633–34. Courts faced with the question of whether to suppress evidence seized after an unequivocal invocation of counsel, have sided with Mr. Seppala's view of the law.  *See, e.g., Osburn v. State*, 326 S.W.3d 771, 783 (Ark. 2009) ("[W]e are of the opinion that 'there is a critical difference between a mere defect in the administration of *Miranda* warnings 'without more' and police-initiated interrogation conducted after a suspect unambiguously invokes the right to have counsel present during questioning,' as '[t]he latter is a violation of a constitutional right.'")  (quoting *State v. Harris*, 544 N.W.2d 545, 553 (Wisc. 1996)); *see also* Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 9.5(a) (4th ed. 2016) ("Some courts have concluded that *Elstad* is inapplicable (even assuming voluntariness of the confession) if the police failed to honor the defendant's invocation of his right to silence or right to counsel.").  Furthermore, *Patane* and other cases relied on the by the Government involve the "introduction at trial of physical evidence resulting from ***voluntary statements***."  *Patane*, 542 U.S. at 634 (emphasis added).  But as discussed above, Mr. Seppala was badgered into speaking with agents after he invoked his right to counsel on four occasions before giving the agents his passwords.  *See* Ex. A–C.  His statements were not voluntary.

The Court need not, however, wade into the murky waters of *Miranda* and the Fifth Amendment's relationship with the "poisonous tree" doctrine because there is far clearer "black-letter law" on point: introduction of this evidence would violate the Sixth Amendment. As discussed above, because Mr. Seppala was indicted prior to his interrogation, his Sixth Amendment right to counsel had already attached. *See supra*, at 2–3. In this situation, "it is clear that the constitutional violation occurs at the time of the deprivation of counsel, and thus it may be concluded that the confession can constitute a 'poisonous tree' for purposes of fruits analysis." LaFave, *Criminal Law* § 9.5(a); *see also Brewer v. Williams*, 430 U.S. 387 (1977) & *Nix v. Williams*, 467 U.S. 431, 441–43 (1984) (holding a violation of *Massiah* requires suppression of all derivative evidence gleaned through exploitation of the Government's wrongdoing); *United States v. Kimball*, 884 F.2d 1274, 1278–79 (9th Cir. 1989) ("[T]he appropriate remedy for a violation of *Massiah* includes not only suppression of all evidence directly obtained through governmental misconduct, but also suppression of all evidence that can properly be designated the fruits of that conduct."); *United States v. Reyes*, 934 F. Supp. 546, 663 (S.D.N.Y. 1996) (Scheindlin, J.) ("[T]he courts must not let the Government benefit from its misconduct by putting it in a better position than it would have occupied absent its constitutional violations. . . . To admit the evidence at issue here would do just that. . . . [T]he evidence at issue here was obtained in violation of Reyes' Sixth Amendment right to counsel. Consequently, neither the money nor the jewelry may be admitted at the trial of Reyes on the current indictment.").

11

As Mr. Seppala was already indicted, his Sixth Amendment rights were violated when the agents failed to cease his interrogation after he invoked. Therefore, all physical evidence, including the materials on his electronic devices, should be suppressed as fruits of this poisonous tree. *See Nix*, 467 U.S. 441–43.

The final issue on this matter is whether the agents "would have been able to [search the devices] "in any event" even without Mr. Seppala providing his passwords; or in legalese, whether Mr. Seppala's suppression arguments on this issue would fail under the doctrine of inevitable discovery. *See* Gov't Opp. at 15. On this issue, a hearing is required.

The government attached no affidavit to their opposition swearing that the agents in this case would have been able to search Mr. Seppala's devices without his assistance. Consequently, they are unable to meet their burden to show that the "evidence in question would inevitably have been discovered without reference to the police error or misconduct." *Nix*, 467 U.S. at 448. To meet this burden, the Court must find, "***with a high level of confidence***, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006) (emphasis added). The Court cannot take the Government's word for it. Rather, "proof of inevitable discovery 'involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *United States v. Eng*, 971 F.2d 854, 859 (2d Cir. 1992).

Recently, in *United States v. Zarrab*, Judge Berman ordered a hearing on very similar facts. *See* No. 15-CR-867 (S.D.N.Y.), ECF No. 91 (Oct. 18, 2016) (citing *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (attached as Reply Ex. 1 for the Court's convenience). In *Zarrab*, the defendant was stopped at the airport and was asked to turn over the passwords to his electronic devices. *See* Transcript of Oral Argument at 25–26, *United States v. Zarrab*, No. 15-CR-867, ECF. No. 88 (Oct. 14, 2016) (attached as Reply Ex. 2). Judge Berman ordered a hearing to determine whether the materials on the defendant's phone would have been inevitably discovered. This decision is in line with another similar case, *United States v. Djibo*, in which Judge Johnson determined that the Government failed to meet its burden in that case that evidence on an iphone would have been inevitably discovered without the defendant providing his passcodes. 151 F. Supp. 3d 297, 310–11 (E.D.N.Y. 2015). The court suppressed the evidence. *Id.* The same result is warranted here: Mr. Seppala's Sixth Amendment rights were violated, and the evidence found on his electronic devices should be suppressed, as the Government failed to meet its burden that the evidence would have been inevitably discovered.

## CONCLUSION

For all the reasons stated above and in his main brief, Mr. Seppala respectfully requests that the Court grant the relief he seeks herein. At a minimum, the Court should order a hearing on the remaining open questions.

Dated:      New York, New York
            June 9, 2017

Respectfully submitted,
Federal Defenders of New York, Inc.

By: _____

ANNALISA MIRÓN, ESQ.
IAN MARCUS AMELKIN, ESQ.
Attorneys for Defendant
**Gerald Seppala**
52 Duane Street - 10th Floor
New York NY 10007
Tel.: (212) 417-8780

14