```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/22/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

-against-

GERALD SEPPALA,

Defendant.
----------------------------------------------------------X

16-CR-436 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Defendant Gerald Seppala ("Seppala") is charged with wire fraud in violation of 18 U.S.C. §§ 1342–43 and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.

Seppala moves to suppress his post-arrest statements to law enforcement officers on the grounds that admitting such statements would violate his rights under the Sixth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966).[1] Seppala's motion is GRANTED because Seppala unambiguously invoked his right to counsel when he asked, "Do I have an opportunity to call an attorney?"

## I. BACKGROUND

On June 22, 2016, Seppala was indicted by a Grand Jury sitting in this District. (Indictment, ECF No. 1.) Six days later, at around 7:00 a.m., a team of Federal Bureau of Investigation ("FBI") agents led by Special Agent Matthew Vogel ("SA Vogel") arrived at Seppala's home to execute a search warrant. (Gov't Opp'n, ECF No. 70, at 2.) The agents arrested Seppala, who had never been arrested before. (Def.'s Aff., ECF No. 69, ¶16.)

---

[1] Initially, Seppala also moved to exclude evidence collected from certain electronic devices. (Def.'s Mot., ECF No. 67, at 14.) Seppala subsequently withdrew that portion of his motion. (Ltr. from Def., ECF No. 106).

While agents began searching his home, Seppala was led in handcuffs to a table where the agents had set up a video camera. Moments after Seppala sat down, the following initial exchange took place:

> Seppala: Do I have an opportunity to call an attorney?
>
> SA Vogel: Uh, you will.
>
> Seppala: Okay.
>
> SA Vogel: Let's, um, let's go through what's going on so that you make informed decisions today.

(Video A at 8:58–9:14.[2]) Immediately after this exchange, SA Vogel advised Seppala of his *Miranda* rights, including the right to counsel. (Video A at 9:44–10:08.) Vogel then uncuffed Seppala, and Seppala signed a form that further advised him of his *Miranda* rights (the "advice-of-rights form"). (Opp'n, Ex. 1, ECF No. 70–1).

After signing this form, FBI agents began to interview Seppala, who was visibly bewildered. Fifteen minutes into the interview, the following exchange occurred:

> Seppala: When can I call a lawyer, because we're not making progress?
>
> SA Vogel: I- I . . . you—you can, like we said before and on—and on that form, you can stop—you can answer any, as many, or none of the questions. And whether you—
>
> Seppala: I'm trying to help you.

(Video B at 10:10-10:25.)

The interview continued and, a few minutes later, this exchange ensued:

> Seppala: Here's what I want to do. I want to cooperate with you, but I'm

---

[2] Seppala provided the Court with a CD containing the video of these statements. The Government agrees that this video "fairly and accurately depict[s] the circumstances of the statement." (Opp'n, ECF No. 70, at 1–2.) The video is in eight sequential, letter-coded clips. For ease of reference, the Court will simply refer to the clip and time stamp.

2

not a lawyer. I need some advice from a lawyer to be able to cooperate fully.

SA Vogel: Well, let's go on to lawyers, then. . . . Who is Barry Reis?

(Video B at 20:25-20:59.) The interview then continued for about another hour before concluding.

Seppala contends that he unequivocally invoked his right to counsel in the first exchange, by asking, "Do I have an opportunity to call an attorney?" For that reason, he moves to suppress the entire videotaped statement. (Def.'s Reply, ECF No. 76, at 5–6.) In the alternative, Seppala argues that he unequivocally invoked his right to counsel in the second exchange by asking "[w]hen can I call a lawyer . . . ," and so statements after that point should be suppressed. (*Id.* at 6.) Finally, Seppala argues that, even if he did not invoke his right to counsel, he did not knowingly and voluntarily waive his *Miranda* rights, because Special Agent Vogel deceived Seppala about those rights during the first exchange. (Def.'s Mot., ECF No. 67, at 13–14.) The Government maintains that none of the three exchanges contain an unequivocal invocation, and that Seppala validly waived his right to counsel. (Opp'n at 6.) However, because Seppala's statement in the third exchange "comes closest" to an unequivocal invocation, the Government agrees not to introduce, in its case-in-chief, statements made after that third exchange. (*Id.*) Thus, at issue is (i) whether Seppala unambiguously invoked his right to counsel in the first exchange and, if not, (ii) whether he validly waived his rights even though SA Vogel had arguably misstated them when he said that Seppala could call an attorney "later," and (iii) whether Seppala unambiguously invoked his right to counsel in the second exchange. Because the Court holds that Seppala unambiguously invoked his right to counsel in the first exchange, as discussed below, it is not necessary for the Court to address issues (ii) or (iii).

## II. APPLICABLE LAW

An indicted defendant subject to custodial interrogation has the right "to consult with an

3

attorney and to have counsel during questioning" pursuant to both the Sixth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). *Davis v. United States*, 512 U.S. 452, 457 (1994); *United States v. Scarpa*, 897 F.2d 63, 67–8 (2d Cir. 1990). Once a suspect invokes his right to counsel, all questioning must cease. *Davis*, 512 U.S. at 458 ("[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.") (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)). In applying this "rigid, prophylactic rule," courts must "determine whether the accused *actually invoked* his right to counsel." *Id.* at 458 (internal quotation marks and citations omitted) (emphasis in original).

Invocations must be objectively clear to be effective. *Id.* at 459; *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (noting that invocation "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney"). Ambiguous or equivocal statements will not suffice. *Davis*, 512 U.S. at 459 ("[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.") (emphasis in original). Indeed, a suspect's "bare reference to a lawyer" is insufficient to invoke the right to counsel. *United States v. Lights*, 208 F. Supp. 3d 568, 574 (S.D.N.Y. 2016) (Sweet, J.); *see also, e.g., Davis*, 512 U.S. at 462 (holding "Maybe I should talk to a lawyer" was insufficient); *Diaz v. Senkowski*, 76 F.3d 61, 63–65 (2d Cir. 1996) (holding "I think I want a lawyer," and "Do you think I need a lawyer?" were insufficient).

But "a suspect need not speak with the discrimination of an Oxford don" to invoke this right. *Wood v. Ercole*, 644 F.3d 83, 91 (internal quotation marks and citation omitted). Invocations of the right to counsel evincing "no internal debate" are deemed effective. *Id.* at

4

91–92 (holding that, "I think I should get a lawyer" was an unambiguous invocation); *see also Smith v. Endell*, 860 F.2d 1528, 1529, 1531 (9th Cir. 1988) (holding that, "Can I talk to a lawyer?" was an unambiguous invocation), *cert. denied*, 498 U.S. 981 (1990).

In deciding whether the right has been invoked, a court may weigh a defendant's demeanor and prior criminal history. *See United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (accounting for defendant's "confidence, familiarity with the law and determination" in holding that the defendant did not invoke his right to counsel); *Thompson v. Fischer*, No. 02-CV-0526 (JBW), 2003 WL 23198787, at *15 (E.D.N.Y. Oct. 31, 2003) ("Given petitioner's criminal record, he was sufficiently sophisticated to express his desire for a lawyer if he had wanted one.").

"The prosecution bears the burden of proving, at least by a preponderance of the evidence," that a defendant's waiver and statements were voluntary. *See Missouri v. Seiber*, 542 U.S. 600, 608 n.1 (2004). A defendant who waives his *Miranda* rights is generally considered to have also waived his rights under the Sixth Amendment. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *Patterson v. Illinois*, 487 U.S. 285, 296 (1988)). "In general, a suspect who reads, acknowledges, and signs an 'advice of rights' form before making a statement has knowingly and voluntarily waived *Miranda* rights." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citation omitted). A waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)) (internal quotation marks omitted).

## III. DISCUSSION

Seppala unequivocally and unambiguously invoked his right to counsel when he asked, "Do I have an opportunity to call an attorney?" *See Wood v. Ercole*, 644 F.3d at 91. This

5

request "evidences no internal debate whatsoever." *See id.* Indeed, this statement is functionally identical to statements that other courts have held were unambiguous. *See United States v. Hunter*, 708 F.3d 938, 943–44 (7th Cir. 2013) ("[A]ll three defendants used the word 'can.' The defendants' choice of the word 'can,' by definition, means that they were inquiring into their present ability to be 'able to' obtain a lawyer or to '*have the opportunity* or possibility to' obtain a lawyer.") (quoting Oxford Dictionaries Pro Online) (emphasis added); *Kamyab v. Uribe*, No. 08-CV-5557 (GAF), 2009 WL 1520022, at *15–16 (C.D. Cal. May 29, 2009) (holding that, "Can I call my lawyer?" is an "unequivocal request for counsel."), *aff'd,* 504 F. App'x 585 (9th Cir. 2013). Thus, Seppala's interrogation should have stopped immediately after he asked, "[d]o I have an opportunity to call an attorney?". *See Edwards*, 451 U.S. at 484– 85 (1981); *Wood*, 644 F.3d at 91 (holding that videotaped statement was inadmissible at trial because law enforcement "had an obligation to stop all questioning after [the suspect] unambiguously asserted his right to counsel").

The Government contends that Seppala's question "Do I have an opportunity to call an attorney?" was "'ambiguous or equivocal'" because Seppala may have been asking whether he "would have an opportunity to call an attorney at some unspecified time in the future." (Opp'n at 9–10.) The Court disagrees. When Seppala made the request, he was visibly bewildered at the sight of a team of FBI agents searching his home in front of his son. *See Scarpa*, 897 F.2d at 70. Based on his demeanor and lack of a criminal record, it was clear that he was confused and had no prior experience being interrogated by law enforcement. *See id.* The Government's contention that Seppala was asking about his right to counsel in the distant future defies common sense.

The Government also claims that, by subsequently being advised of his rights and signing the advice-of-rights form, Seppala showed that he was not, in fact, requesting counsel. But

6

Seppala's later being advised of his rights and signing the advice-of-rights form cannot be used to "cast retrospective doubt" on his unequivocal request for counsel. *See Smith v. Illinois*, 469 U.S. 91, 98–99 (1984); *United States v. Quiroz*, 13 F.3d 505, 511 (2d Cir. 1993) ("In determining whether a particular suspect's request for counsel was ambiguous, *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.") (internal quotation marks and citation omitted) (emphasis in original), *abrogated on other grounds by United States v. Plugh*, 648 F.3d 118, 126 (2d Cir. 2011).

In *United States v. Lights*, 208 F. Supp. 3d 568 (S.D.N.Y. 2016) Judge Sweet ruled differently on a similar formulation. The circumstances in that case, however, are vastly different. In *Lights*, the defendant, Carl Lights, gave a statement immediately following his arrest. *Id.* at 571–72. While a detective was advising Lights of his *Miranda* rights, Lights asked, "Can I call my attorney?" *Id.* at 571–72. When the interviewing detective told Lights, "Of course you can," Lights immediately clarified, "I ain't gonna call him yet . . . ." *Id* at 572. Lights also had prior convictions. *Id.* at 573. Based on these facts, Judge Sweet held that Lights had not invoked his right to counsel and denied his motion to suppress the statement. *Id.* at 575-76. Here, by contrast, the FBI agents did not permit Seppala to call his attorney, nor did Seppala clarify that he wished to call his attorney only after the interview. Moreover, unlike Lights, Seppala had no prior experience with the criminal justice system.

Because Defendant's initial invocation was unambiguous, and it came at the outset of his videotaped statement, the entirety of the statement is inadmissible. *See Wood*, 644 F.3d at 92. Defendant's motion is GRANTED.

The Clerk of the Court is directed to terminate the motion at ECF No. 67.

SO ORDERED.

Dated: New York, NY
November 22, 2017

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge