UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,     :

     :

       v.      :         16 CR. 436 (KMW)

     :

STEVEN BROWN,     :

              Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
TO COMPEL DISCLOSURE OF LAW ENFORCEMENT
CONTACTS WITH THE PURPORTED VICTIMS AND THEIR
<u>REPRESENTATIVES, AND FOR A POSSIBLE EVIDENTIARY HEARING</u>**

DOAR RIECK KALEY & MACK
Walter Mack
David Rivera
Michael Minnefor
217 Broadway - Suite 707
New York, N.Y. 10007-2911
(Tel.) 212-619-3730
(Fax)  212-962-5037
*Attorneys for Steven Brown*

## <u>TABLE OF CONTENTS</u>

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     THE GOVERNMENT MUST DISCLOSE *BRADY*, *GIGLIO*
          AND RULE 16 MATERIALS IN THE FILES OF THE PARTIES
          WITH WHOM IT COORDINATED AND JOINTLY INVESTIGATED
          THE ALLEGED CRIMINAL CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          A.     The Deposition Testimony Reflects that the FBI/USAO
                  Worked Closely with Attorney-A and the Purported
                  Victims to Gather Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          B.     Victim-2 Assisted in the Criminal Investigation,
                  Working Under the Direction of the FBI to Secretly
                  Record Telephone Calls with Mr. Brown . . . . . . . . . . . . . . . . . . . . . . . 5

          C.     The Purported Victims' Use of the Implied Threat
                  of Criminal Prosecution to Extort Settlement
                  Payments is a Further Indicator of How Improperly
                  Intertwined the Criminal and Civil Cases Have Become . . . . . . . . . . . . . 6

          D.     Documents Reflecting the Decision Not to
                  Prosecute the Conduct at Issue in the Superseding
                  Indictment Must be Produced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

## CASES

*Brady v. Maryland*,
    373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Giglio v. United States*,
    405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Kyles v. Whitley,
    514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 fn.

*United States v. Bin Laden*,
    397 F.Supp.2d 465 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Connolly*,
    2017 WL945939 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4,  4 fn., 5

*United States v. Ghailani*,
    687 F.Supp.2d 365 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Gupta.*
    848 F. Supp.2d 491 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 fn.

*United States v. Heine and Yates*,
    314 F.R.D. 498 (D.Or. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 fn.

*United States v. Locasio*,
    6 F.3d 924 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 fn.

*United States v. Mahaffy*,
    446 F.Supp.2d 115 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 3 fn., 5 fn.

*United States v. Martoma*,
    990 F. Supp.2d 458 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . 3, 4 fn., 5 fn.

*United States v. Meregildo*,
    920 F. Supp.2d 434 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 4 fn., 6 fn.

*United States v. Stein*,
    488 F.Supp.2d 350 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 fn.

**<u>AUTHORITIES</u>**

Fed.R.Crim.P. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6 fn.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,    :

          v.              :          16 CR. 436 (KMW)

STEVEN BROWN,          :

                 Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
TO COMPEL DISCLOSURE OF LAW ENFORCEMENT
CONTACTS WITH THE PURPORTED VICTIMS AND THEIR
REPRESENTATIVES, AND FOR A POSSIBLE EVIDENTIARY HEARING**

### Summary of Argument

There is no dispute that there were significant contacts between the FBI/USAO and

witnesses in the parallel civil litigations, sometimes in the days leading up to deposition

testimony by certain witnesses.[1]  For example,

> • Victim-2's counsel ("Attorney-A") communicated with the FBI several times –
> including just *two days* before his own deposition and several days after Victim-2's
> testimony – and with the U.S. Attorney's Office for the Southern District of New York
> "five or six times" in the weeks leading up to his testimony.  Whenever the U.S.
> Attorney's Office or the FBI contacted him or requested a meeting, he answered their
> questions and forwarded documents.  At his deposition, he refused to answer questions
> about whether Mr. Brown's name had come up in the investigation.  (Mack Reply Aff.,
> Exh. A at 163-169).[2]

---

[1] The Defense did not initially attach the deposition pages to the Mack Affirmation out of
an abundance of caution given the Protective Order in place in this case and was intending to
work with the Government to provide the relevant documents to the Court either *in camera* or
under seal at the completion of briefing.  However, since many of the documents are publicly
filed in civil proceedings and since the government has attached and redacted the relevant pages,
we have taken the same approach.  (*See* Mack Reply Aff., Exhs A to I.)

[2] The government argues that Attorney-A stated that "he did not know who was under
investigation." (Government's Memorandum of Law in Opposition to Defendant's Motion to

- Victim-2 testified that he had telephone conversations with the FBI and met with them several times.  He refused to say whether the FBI had instructed him not to answer certain questions at his deposition.  (See Mack Reply Aff.,¶ 3; Exh. B at 88-95, 100-103). [3]

Most importantly, in addition to the deposition testimony reflecting coordination and joint fact-gathering with law enforcement, the government concedes Victim-2 was working under the direction of the FBI to gather evidence, secretly recording telephone calls with Mr. Brown.

A further indicator of the intertwinement of the civil and criminal matters is how Attorney-A, Attorney-A's law firm and other so-called victims have used the pendency of this criminal matter to try to extort settlements in various civil actions.  The government does not give serious consideration to this troubling conduct.

---

Compel and for Review of the Grand Jury Minutes ("Government Memo") at 8).  But it ignores the fact that when Attorney-A was asked whether "Mr. Brown's name had come up in his conversations with the U.S. Attorney and the FBI", Attorney-A answered:  "I would rather not respond to any content of the discussions."  (Mack Reply Aff., Exh. A at 168).

[3] The government minimizes the contacts between law enforcement, Victim-3, and the movie director, by pointing out that the defense "stops short" of calling any "coordination" between law enforcement and those parties a "joint investigation."  (See Government Memo at 13-14, n.9).  The fact remains that (i) Victim-3 testified he had engaged in conversations with an FBI Agent more than once, though he did not recall how many times they spoke, and sent them various documents and exchanged emails with them – which were requested but never produced in the civil litigation (Mack Reply Aff., Exh. C), and (ii) that the movie director admitted at his arbitration hearing he had failed to reveal his contacts with the FBI at his deposition.  (Mack Reply Aff., Exh. D).  This raises questions about whether all the victims and witnesses were instructed not to disclose information or documents about the criminal investigation in the civil litigations.  It also raises questions about whether if by word, deed or suggestion law enforcement influenced in any way the conduct in the civil cases.  The nature and content of these communications are what the defense is asking the Court to direct be produced.

## ARGUMENT

## I.

### THE GOVERNMENT MUST DISCLOSE *BRADY, GIGLIO* AND RULE 16 MATERIALS IN THE FILES OF THE PARTIES WITH WHOM IT COORDINATED AND JOINTLY INVESTIGATED THE ALLEGED CRIMINAL CONDUCT

**A.      The Deposition Testimony Reflects that the FBI/USAO Worked Closely with Attorney-A and the Purported Victims to Gather Facts**

The authorities cited in the Government Memo highlight the fact that a wide-ranging

spectrum of conduct exists that might or might not constitute a joint investigation and that the

Court must examine the totality of the circumstances and make a determination based on the

specific facts of the case.  As this Court has held, whether a joint investigation took place is "a

fact-specific inquiry that is best approached on a case-by-case basis." *United States v. Martoma*,

990 F.Supp.2d 458, 461 (S.D.N.Y. 2014); *United States v. Connolly*, 2017 WL945939 at *5

(S.D.N.Y. 2017) (applying the "totality of the circumstances" test).

In *Martoma, supra,* the court found that it lacked sufficient information to make the

determination about the level of interaction between the USAO and the SEC and thus ordered the

parties to submit affidavits addressing the issue.  990 F. Supp.2d at 460.[4]  The Government's

Memo provides no explanation about the USAO's own numerous contacts with Attorney-A, the

---

[4] It is ironic that while repeatedly complaining about the Mack Affirmation's "second-hand account" of facts based on the review of the documents and upon information and belief, the USAO itself submits *no affirmation*, second-hand or otherwise, explaining the nature of its interactions with Attorney-A or Victim-2, particularly in the dates leading up to their testimony. Indeed, the government carefully steers clear of the subject.  For this reason, the government's reliance on *United States v. Mahaffy*, 446 F.Supp.2d 115 (E.D.N.Y. 2006) is misplaced.  In that case, the court rejected arguments that the criminal and regulatory proceedings had become improperly intertwined based on the sworn affidavit submitted by the SEC detailing its interactions with the USAO.  *Id.* at 126.

nature of the FBI's contacts with Attorney-A two days before his deposition, or if the FBI instructed Victim-2 not to answer certain questions about the criminal investigation.

After reviewing the affidavits, the court in *Martoma* emphasized that the test to determine whether a joint investigation took place is whether "joint fact-gathering" occurred, and involves consideration of "the degree of cooperation" and "coordination." *Id.* at 461. Based in large part on the fact that the USAO conferred with the SEC, obtained documents, conducted joint interviews, and received advance notice of a deposition – even receiving a phone call during a break in the deposition with "an update as to the testimony thus far" – the court found joint fact-gathering sufficient to impose an obligation on the AUSA to produce documents in the SEC's files. *Id.* at 462. *See also Connolly, supra,* 2017 WL945939 at *5 ("Whether someone is part of the prosecution team depends on the level of interaction between the prosecutor and the agency or individual.")[5].

Here, Attorney-A reached out to someone he knew at the FBI, was subsequently contacted by the FBI several days after his client, Victim-2, was deposed and two days before Attorney-A's own deposition, held "five or six" discussions directly with the USAO as of July 9, 2015, and produced documents to them collected during the civil proceedings. (Mack Reply Aff., Exh. A). Although subsequent contacts between the USAO/FBI and Attorney-A are unknown, he and his law firm have a tremendous financial incentive to assist in the criminal

---

[5] The government strains to distinguish *Martoma* and *United States v. Gupta,* 848 F. Supp.2d 491 (S.D.N.Y. 2012) on the grounds that the joint investigation in those cases was between the government and an agency, but as set forth in *United States v. Meregildo,* 920 F.Supp.2d 434, 441 (S.D.N.Y. 2013), the relevant test applies to an "agency or individual"; *see also Connolly, supra* at *5 ("the level of interaction between the prosecutor and *the agency or individual*) (*quoting Meregildo*) (emphasis added).

proceedings given the pending civil lawsuits his firm has filed against various individuals involved in these film investments. His client, Victim-2, testified he had telephone conversations with the FBI, met with them several times, and refused to say whether he had been instructed not to answer certain questions at his deposition. (Mack Reply Aff., Exh. B at 90).[6] Indeed, Victim-2's counsel at the deposition noted that Victim-2 would be assisting the investigation and submitting to the direction of law enforcement. ("[I]f the FBI tells me not to do something, I'm going to . . . say "yes, sir" or "yes, ma'am").[7] In fact, Victim-2 went far beyond saying "yes, sir" and "yes, ma'am." He literally joined the criminal investigative effort, working closely with the FBI to gather evidence, secretly recording conversations with Mr. Brown. (*See* Section B below).[8]

---

[6] The government argues it is "pure conjecture" that Victim-2 refused to answer questions at the behest of the FBI. But what is clear from the colloquy quoted at length in the Mack Reply Aff., at ¶ 3, is that counsel took a lunch break to do some "fact-checking" on whether the FBI had given some direction on answering questions about the criminal investigation and "whether they said something to others who are dealing with the FBI." (*Id.* at 92). Following the break, Victim-2 refused to answer any questions about the criminal investigation, including whether the FBI had instructed him not to answer certain questions. *Id.* at 102.

[7] The government fails in its attempt to distinguish *United States v. Heine and Yates*, 314 F.R.D. 498 (D. Or. 2016), a case in which the court ordered production of communications between law enforcement and the attorney for a bank based on repeated contacts between the FBI and the attorney in anticipation of a deposition. The government argues that the deposition questioning in that case involved matters unrelated to the civil complaint and directly implicated by the criminal charges. (Government Memo at 13 n. 7). But in the same way, the matters about which Attorney-A and Victim-2 were questioned – and which they refused to answer – pertained to their participation in the criminal investigation.

[8] Since this testimony creates a threshold evidentiary showing of "intertwinement," an evidentiary hearing would be appropriate to determine the frequency and the nature of these contacts. For this reason, *United States v. Mahaffy*, 446 F.Supp.2d 115 (E.D.N.Y. 2006) is inapposite. At the very least, the government should be ordered to submit an affidavit on its interactions with Attorney-A and his law firm and Victim-2, as in *Mahaffy* and *Martoma*, *supra*.

**B.      Victim-2 Assisted in the Criminal Investigation, Working Under the
Direction of the FBI to Secretly Record Telephone Calls with Mr. Brown**

"[U]nder the totality of the circumstances, the more involved individuals are with the

prosecutor, the more likely they are team members." *Connolly, supra*, 2017 WL945939 at *5

("The prosecution team may ... include individuals who are not strategic decision-makers.");

*United States v. Bin Laden*, 397 F.Supp.2d 465, 481 (S.D.N.Y. 2005) (agents of United States

Marshals Service's Witness Security Program were members of the prosecution team because, at

the prosecution's defense, the agents installed and operated video-teleconferencing equipment

"to further the government's investigation"); *United States v. Ghailani*, 687 F.Supp.2d 365, 372

(S.D.N.Y. 2010).[9]

The government concedes in its opposition brief that Victim-2 was working "at the

direction of the FBI" to secretly record telephone conversations with Mr. Brown.  Government's

Memo at 20.[10]  This is conclusive evidence that Victim-2 (and presumably Attorney-A, who

initially contacted the FBI and represented Victim-2) were working with the FBI to gather facts

and evidence in the criminal investigation, which had the additional benefit of supporting the

civil litigations against Mr. Brown and others.  It is difficult to conceive of getting more involved

---

[9] The fact that different levels of interaction result in different outcomes only underscores the fact-specific nature of the court's inquiry. *Compare United States v. Locascio*, 6 F.3d 924, 929 (2d Cir. 1993) (rejecting imputation of FBI reports by agents uninvolved in the investigation or trial) to *Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (prosecutor charged with knowledge of report by police investigators); and *Meregildo, supra*, 920 F.Supp.2d 434 (cooperating witness who never participated in investigation not a member of the prosecution team) to *United States v. Stein*, 488 F.Supp.2d 350, 364 (S.D.N.Y. 2007) (materials in control of cooperating corporation are within government's control for Rule 16 purposes because of cooperation agreement).

[10] *Victim-4* also worked with the FBI to secretly record telephone calls. (Mack Reply Aff., ¶11).

-6-

in a criminal investigation than becoming an active participant, working under the direction of the FBI.

### C.     The Purported Victims' Use of the Implied Threat of Criminal Prosecution to Extort Settlement Payments is a Further Indicator of How Improperly Intertwined the Criminal and Civil Cases Have Become

The government thinks it unimportant that Attorney-A's law firm and various purported victims have used the implied threat of criminal prosecution to try to pressure various individuals into financial settlements, noting that there is nothing "improper or unusual" about "pursuing" civil remedies while a criminal case is being investigated or prosecuted. Government Memo at 20. The government takes this position without even considering or addressing the extortion statutes and other authorities cited in the Moving Brief under California, New York and federal law. *See* Moving Brief at 11 (citing authorities). Victim-9 aggressively pursued settlement talks just prior to the filing of the Superseding Indictment adding him as a victim. And Victim-2's conduct was particularly egregious in threatening criminal prosecution and invoking the threat of BIG BROTHER unless Mr. Brown got Mr. Williams to take certain actions. (Mack Reply Aff., Exh. E).

Moreover, defense counsel, when he became aware of theses potential criminal violations by the government's witnesses, specifically brought them to the attention of AUSA Egan. (Mack Affirmation in Support of Motion to Compel, affirmed December 15, 2017 at ¶ 15).

If nothing else, this conduct is another indicator of just how intertwined the civil and criminal matters have become in this case, and provides another reason for an evidentiary hearing on this subject.

-7-

**D.      Documents Reflecting the Decision Not to Prosecute the Conduct
at Issue in the Superseding Indictment Must be Produced**

The Government states that it has consulted with the FBI and is unaware of any

investigation in either California or Louisiana into the conduct at issue in the Initial or

Superseding Indictment.  (Government Memo at 18).  Notably, however, it does not indicate

whether it has inquired of its own witness, Victim-2, who specifically stated that he had arranged

for presentations to be made to law enforcement in California and Louisiana, but that the case

against Mr. Williams had been declined.  It is the government's witnesses who were seeking to

extort money from the defendants and went to other prosecutors to promote criminal

prosecutions at various law enforcement venues.  It should therefore be the government's

obligation to contact its own witnesses to determine the truth or falsity of these assertions as

clearly none of the government's witnesses are going to speak about this with Mr. Brown's

defense counsel.

The government concedes, however, that it has learned of an investigation of David

Williams in the Central District of California six years before the filing of the instant case, closed

without the filing of charges, involving "separate conduct" and that it has already produced

"certain materials originally collected in the course of that investigation." *(Id).*[11]  It also states

that with respect to "other materials in the Government's possession originally collected or

prepared in the course of that investigation" the government is evaluating its *Brady*, *Giglio* and

Jencks Act obligations.  *(Id.)*  The defense requests the immediate production of these

---

[11] The defense has been unable to identify these materials among the millions of pages
produced by the government and requests that these materials be identified by Bates number.

exculpatory materials under *Brady*, as Mr. Williams' questionable activities demonstrate that he, and he alone, was the architect of the criminal activity charged in this case.

## Conclusion

Based on the foregoing, the defense respectfully requests that the Court order production of the requested documents and information.  Alternatively, the defense requests that the Court order the USAO to submit an affidavit explaining the nature of its contacts and the FBI's contacts with Attorney-A and Victim-2, or to schedule an evidentiary hearing in which the FBI agent assigned to the case and Attorney-A can address the frequency and the nature of the interactions between law enforcement and Attorney-A, Victim-2 and the other victims.

Dated: New York, New York
       January 26, 2018

                                        Respectfully submitted,

                                        DOAR RIECK KALEY & MACK

                                        By: _____/s/_____
                                                Walter Mack
                                                David Rivera
                                                Michael Minnefor
                                                217 Broadway, Suite 707
                                                New York, N.Y. 10007-2911
                                                (Tel.) 212-619-3730
                                                (Fax)  212-962-5037
                                                *Attorneys for Steven Brown*