UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,                    :

             v.                         :                    16 Cr. 436 (KMW)

STEVEN BROWN,                                :
             Defendant.
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS THE SUPERSEDING INDICTMENT FOR IMPROPER VENUE
OR, ALTERNATIVELY, TO TRANSFER PURSUANT TO RULE 21**

DOAR RIECK KALEY & MACK
Walter Mack, Esq.
David Rivera, Esq.
Michael Minnefor, Esq.
217 Broadway, Suite 707
New York, New York 10007
Tel: 212-619-3730
Fax: 212-962-5037
*Attorneys for Defendant Steven Brown*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   PROSECUTION OF THIS CASE IN THIS DISTRICT IS
     UNCONSTITUTIONAL AND THE MOTION TO DISMISS
     SHOULD THEREFORE BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   The Superseding Indictment Fails to Establish Venue for
          the Newly Added Count Four: Conspiracy to Commit Wire
          Fraud against a California Entertainment Agency . . . . . . . . . . . . . . . . . . 3

     B.   The Remaining Substantive and Conspiracy Counts
          Should Also be Dismissed for Lack of Venue . . . . . . . . . . . . . . . . . . . . . 5

     C.   The Alleged Criminal Activity in Counts One through
          Five Does Not Have "Substantial Contacts" with the
          Southern District of New York . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.  IF THE COURT DENIES THE MOTION, THE DEFENDANT
     REQUESTS THAT HIS OBJECTION BE PRESERVED . . . . . . . . . . . . . . . . . 12

III. IF THE COURT DENIES THE MOTION, THE DEFENDANT
     REQUESTS A BILL OF PARTICULARS DETAILING THE
     GOVERNMENT'S GROUNDS FOR VENUE FOR EACH COUNT . . . . . . . . . . . . . . 12

IV.  ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED
     FOR THE CONVENIENCE OF THE WITNESSES, THE
     PARTIES, AND IN THE INTERESTS OF JUSTICE . . . . . . . . . . . . . . . . . . . . 13

     A.   Most of the Anticipated Witnesses Reside in California . . . . . . . . . . . . . . . . 14

     B.   Trial in the Southern District of New York
          Would Be Unduly Burdensome to Mr. Brown . . . . . . . . . . . . . . . . . . . . 16

     C.   This Case Should be Transferred in the Interests of Justice . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**Cases**

*Bolton v. Gramlich*,
    540 F. Supp. 822 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Como v. Commerce Oil Co., Inc.*,
    607 F.Supp. 335 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Hyde v. Shine*,
    199 U.S. 62 (1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Connetics Sees Litig.*,
    2007 WL 1522614 (S.D.N.Y. May 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Stillwater Mining Co. Sec. Litig.*,
    2003 WL 21087953 (S.D.N.Y. May 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Platt v. Minnesota Mining & Mfg. Co.*,
    376 U.S. 240 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*United States v. Aronoff*,
    463 F. Supp. 454 (S.D.N.Y., 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Beech-Nut Nutrition Corp.*,
    871 F.2d 1181 (2d Cir.),
    *cert. denied*, 493 U.S. 933 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Bezmalinovic*,
    962 F. Supp. 435 (S.D.N.Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Cabrales*,
    524 U.S. 1 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*United States v. Cashin*,
    281 F.2d 669 (2d Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Cores*,
    356 U.S. 405 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Geibel,*
   369 F.3d 682 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Johnson,*
   323 U.S. 273 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16

*United States v. Martino,*
   2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Ohle,*
   678 F. Supp. 2d 215 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Peterson,*
   357 F. Supp. 2d 748 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Projansky,*
   465 F.2d 123 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ramirez,*
   420 F.3d 134 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 10

*United States v. Reed,*
   773 F.2d 477 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 12

*United States v. Rivera,*
   388 F.2d 545 (2d Cir.),
   *cert. denied,* 392 U.S. 937 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 17

*United States v. Rodriguez-Moreno,*
   526 U.S. 275 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Rosa,*
   17 F.3d 1531, 1541 (2d Cir.),
   *cert. denied,* 513 U.S. 879 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Saavedra,*
   223 F.3d 85 (2d Cir. 2000),
   *cert. denied,* 532 U.S. 976 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

*United States v. Szur,*
   1998 WL 132942 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Tzolov*,
    642 F.3d 314 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Wilson*,
    2001 WL 798018 (S.D.N.Y. July 13, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **Statutes**

U.S. Const. art. III, § 2, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 18

U.S. Const. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 18

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Crim.P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Crim.P. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed.R.Crim.P. 21(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18

Fed.R.Crim.P. 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

## Preliminary Statement

The Government has wrongly decided to prosecute this case in the Southern District of New York – a district that is not only on the opposite side of the country from where the Defendant and most of the witnesses in the Superseding Indictment reside, but is also far removed from where the alleged criminal conduct purportedly occurred. Venue in this case lies in California, not New York.

The purported scheme to defraud perpetrated by David Williams, which the Government seeks to attribute to Mr. Brown, concerns, almost without exception, conduct alleged to have occurred in California and the financing of motion pictures and documentaries in California. The only constitutional venue for this case is, therefore, a federal district court in California.

Indeed, venue issues are matters of constitutional dimension. Article III of the U.S. Constitution requires criminal trials to "be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. Similarly, the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Venue is not a mere technicality; the Supreme Court has repeatedly emphasized the importance of these vital procedural protections. *See, e.g., United States v. Cabrales*, 524 U.S. 1, 6 (1998) ("Proper venue in criminal proceedings was a matter of concern to the Nation's founders . . . [and] [t]he Constitution twice safeguards the defendant's venue right"); *United States v. Cores*, 356 U.S. 405, 407 (1958) ("The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place."); *United States v. Johnson*, 323 U.S. 273, 276 (1944) ("Questions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of

public policy in the light of which legislation must be construed."). The Second Circuit has also long recognized that "[v]enue is important as a guaranty of the defendant's right to be tried in the vicinity of his criminal activity, and venue requirements are imposed to prevent the government from choosing a favorable tribunal or one which may be unduly inconvenient for the defendant." *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir.), *cert. denied*, 392 U.S. 937 (1968).

Despite these unambiguous constitutional requisites, and the alleged film-making schemes' overwhelming ties to California, the Government has inexplicably elected to bring this case in the Southern District of New York, a location with little to no relevance to the supposed activities at issue.

Accordingly, Defendant submits this memorandum in support of his motion to dismiss all counts in the Indictment for improper venue pursuant to Article III of the U.S. Constitution, the Sixth Amendment, and Fed. R. Crim. Procedure 12(b) (the "Motion").

## ARGUMENT

### I.

### PROSECUTION OF THIS CASE IN THIS DISTRICT IS UNCONSTITUTIONAL AND THE MOTION TO DISMISS SHOULD THEREFORE BE GRANTED

Article III of the Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. This directive is underscored by the Sixth Amendment's requirement that "[i]n all criminal prosecutions, the accused shall [be tried in] . . . the State and district wherein the crime shall have been committed." U.S. Const. amend. VI.

-2-

When a defendant is charged in more than one count, venue must be proper with respect to each count. *See United States v. Ramirez*, 420 F.3d 134, 140 (2d Cir. 2005) ("venue must be proper with respect to each count"); *United States v. Saavedra*, 223 F.3d 85, 89 (2d Cir. 2000), *cert. denied*, 532 U.S. 976 (2001) ("Where . . . a defendant is charged with conspiracy as well as substantive offenses, venue must be laid in a district where all the counts may be tried."); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.), *cert. denied*, 493 U.S. 933 (1989) (same).

Furthermore, "[t]he burden is on the government to prove that the crime was committed in the district in which the prosecution is brought." *Beech-Nut, supra,* 871 F .2d at 1181 (citations omitted).

### A.   The Superseding Indictment Fails to Establish Venue for the Newly Added Count Four: Conspiracy to Commit Wire Fraud against a California Entertainment Agency

In Count Four of the Superseding Indictment[1] (¶¶70-72), the government alleges a conspiracy to commit wire fraud against an Entertainment Agency. While Count Four broadly incorporates all of the allegations in the preceding paragraphs 1-62, the only allegations with respect to the Entertainment Agency are set forth in ¶¶56-62 ("The Scheme to Defraud the Entertainment Agency"). The Superseding Indictment alleges that "Steven Brown, Williams and Agent-1 engaged in a scheme to defraud Agent-1's employer, an entertainment agency." (¶56). The purported conspiracy involved sending "fake" invoices to a film producer "o[]n multiple occasions between February 2012 and May 2014" (¶59) along with bank account information in the name of an entity with "the same initials as the Entertainment Agency." (¶60). While Count

---

[1] Count Four is a new count that did not appear in the initial indictment.

Four contains the boilerplate assertion that the conspiracy took place "in the Southern District of New York" (¶71), the only specific allegation regarding any conduct that took place in New York is the following:

> "On or about February 29, 2012, BROWN withdrew approximately $83.00 from the BROWN Bank Account at an ATM located in Manhattan, New York."

¶61.

This alleged conduct is insufficient as a matter of law to establish venue for Count Four.

First, the general recitation that the conspiracy occurred "in the Southern District of New York" (¶71), standing alone, is insufficient to establish venue. While courts in this Circuit have permitted the Government to plead venue "even if phrased broadly and without a specific address or other information,'" (*United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (citations omitted), even under this relaxed standard, "[w]here venue is challenged on a pretrial motion to dismiss," the Government is still required to show "that the indictment alleges *facts* sufficient to support venue." *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005) (emphasis added); *see also United States v. Martino*, 2000 WL 1843233, at *1 (S.D.N.Y. Dec. 14, 2000) (at the pre-trial stage government must "allege *with specificity* that the charged acts support venue in this district") (citations omitted) (emphasis added).

Second, with respect to Count Four, because the government is unable to make any connection to New York for venue purposes, it relies upon the withdrawal of $83 by Mr. Brown from an ATM in Manhattan. (¶61). The alleged conspiracy by Brown, Williams and Agent-1 – all California residents – to purportedly defraud the California Entertainment Agency would have been devised in California and executed in California. Invoices would have been generated in

California and mailed to parties outside of New York. The alleged withdrawal of cash from an

ATM is not an overt act in furtherance of any conspiracy and is immaterial for venue purposes.

*See Como v. Commerce Oil Co., Inc.*, 607 F. Supp. 335, 341 (S.D.N.Y. 1985) ("The act or

transaction committed within the district need not constitute the core of the violation . . . but

should be an important step in the fraudulent scheme . . . or at least more than an 'immaterial part

of the alleged violations.'") (citations omitted); *Bolton v. Gramlich*, 540 F. Supp. 822, 842

(S.D.N.Y. 1982) (the "act upon which venue is premised must have had 'material importance' in

the wrongful scheme") (citation omitted).

      For this reason, Count Four of the Superseding indictment should be dismissed for lack of

venue.

### B.    The Remaining Substantive and Conspiracy Counts Should Also be Dismissed for Lack of Venue

      Count Three of the Superseding Indictment (¶¶67-69), a new charge that did not appear in

the initial Indictment, charges Mr. Brown with participating in a Conspiracy to Commit Wire

Fraud as to the newly added Victim-9. As with the other counts, the government incorporates the

preceding paragraphs 1 through 62 and uses the words "in the Southern District of New York."

(¶ 68). More importantly, however, the Superseding Indictment specifically alleges that the

conspiracy in question took place from at least "2016, up to and including in or about 2017."

The only allegations relating to that alleged time period for this separate conspiracy are set forth

in Paragraphs 50-55 (captioned "The Scheme to defraud Victim-9"). Also, the alleged

conspiracy in question did not involve Mr. Williams, but rather "Mr. Brown and CC-1." (¶51).

Mr. Brown allegedly promised Victim-9 "a 50% return on investment per year." (*Id.*). The only

allegation supporting New York venue in the applicable 2016-2017 period of this conspiracy is that "Victim-9 traveled to Manhattan New York at the invitation of . . . the defendant" where Mr. Brown allegedly arranged for Victim-9 to meet with Attorney-1, who was involved Brown's various film projects, as well as another individual who solicited an investment from Victim-9 in a film in which Brown purportedly was also investing."  (¶53).

Tellingly, the Superseding Indictment does not allege that Victim-9 made any film investment *in reliance* upon any representations by Mr. Brown or "another individual" in New York.  Indeed, in his California civil lawsuit, Victim-9 alleged in connection with his initial decision to invest in Special Events Productions that "[m]ost if not all" of his discussions with Mr. Brown and CC-1 "took place in Santa Monica at his office or near the office."  (Mack Aff., Exh. A).  There is no reference in that civil complaint to any New York meeting or to any representations made in New York that induced him to invest funds in any film project. (*Id.*) Under these circumstances, it is difficult to consider an alleged single meeting in New York as an overt act in furtherance of the alleged conspiracy.  And it is insufficient to confer venue in New York for Count Three, particularly when weighed against every other aspect of the allegations pertaining to Victim-9, the alleged conspiracy between Mr. Brown and CC-1, and the investment in Special Events – all involving conduct that took place exclusively in California.  There are simply insufficient substantial contacts with this district to warrant venue in New York for Count Three. (*See* Section C below).

Venue for the remaining counts – Count One (conspiracy to commit wire fraud as to Victims 1-8), Count Two (wire fraud), and Count Five (conspiracy to commit money laundering) – are entirely premised on the allegations that (i) Mr. Brown directed emails to Victim 1 in New

-6-

York eight or nine years ago in 2009-2010 in a dispute that was settled long ago, ending any conspiracy with respect to Victim-1,[2] and (ii) Mr. Williams, "in coordination" with Mr. Brown and with his knowledge, directed a fraudulent screenshot of a bank statement to Victim 2's attorney, who was located in Manhattan. (¶23).

First, the alleged reference to emails transmitted to New York took place more than eight years ago, well beyond the statute of limitations and pertain to a conspiracy that would have ended in June 2011, when Victim-1 settled all his claims and executed a release. The Superseding Indictment reflects a four-year gap between the initial 2009 representations made to Victim-1 and the alleged misrepresentations made to Victim-2 in 2013. Any conspiracy between Brown and Williams terminated with the settlement of Victim-1's claims. Since the conspiracy alleged as to Victim-1 is a separate conspiracy and not the same conspiracy as against Victims 2-8, the time-barred conduct cannot form the basis for establishing venue in this district.

Second, the reference to the transmission of Mr. Williams' fraudulent screenshot to Victim's 2 attorney is also insufficient to confer venue. Victim-2 is a Wyoming resident and every alleged communication between Defendant and Victim-2 took place on the West Coast. The fact that Victim-2's counsel was also provided a copy of the screenshot after Victim-2 had already made his investment decision, and that counsel was located in New York does not transform a California civil dispute into a New York criminal case. If such were the case, victims could manufacture venue simply by shopping for counsel in any of the 50 states and then demanding documents be produced to their attorneys. In fact, Victim-2 was located on the West

---

[2] The Superseding Indictment asserts criminal conduct barred by the statute of limitations as noted in the accompanying Memorandum of Law to Dismiss the Charges Premised on 2009-2010 conduct.

Coast and that the alleged criminal activity concerned films made outside of New York by California film-makers.

The Indictment simply fails to allege acts in New York that can be considered "overt acts in furtherance of a conspiracy." *See United States v. Tzolov*, 642 F.3d 314, 320 (2d Cir. 2011) ("An overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy."); *United States v. Rosa*, 17 F.3d 1531, 1541 (2d Cir.), *cert. denied*, 513 U.S. 879 (1994) (venue in a conspiracy prosecution is proper in the district where the conspiratorial agreement was reached or "in any district in which an overt act *in furtherance of the conspiracy* was committed by any of the coconspirators"). *See also Rivera, supra,* 388 F.2d at 548 ("Venue is important as a guaranty of the defendant's right to be tried in the vicinity of his criminal activity, and venue requirements are imposed to prevent the government from choosing a favorable tribunal or one which may be unduly inconvenient for the defendant.").

Additionally, as with the other counts in the Superseding Indictment, the alleged criminal activity does not have substantial contacts with this district. (See Section C below).

### C.    The Alleged Criminal Activity Set Forth in Counts One through Five Does Not "Substantial Contacts" with the Southern District of New York

"Venue is proper only where the acts constituting the offense – the crime's 'essential conduct elements' – took place." *Ramirez, supra,* 420 F.3d at 138; *Como v. Commerce Oil Co., Inc., supra,* 607 F. Supp. at 341; *Bolton v. Gramlich*, 540 F. Supp. 822, 842 (S.D.N.Y. 1982).

To determine whether a prosecution is appropriate in a given venue, courts in this Circuit consider whether the criminal acts in question bear "substantial contacts" with the chosen

district. *Saavedra, supra*, 223 F.3d at 93. "The substantial contacts rule offers guidance on how to determine whether the location of venue is constitutional, especially in those cases where the defendant's acts did not take place within the district selected as the venue for trial." *Id.* This test takes into account four main factors: (1) the site of the defendant's acts; (2) the elements and nature of the crime; (3) the locus of the effect of the criminal conduct; and (4) the suitability of each district for accurate fact-finding. *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985). Although the Second Circuit has said that the substantial contacts rule "does not represent a formal constitutional test," it has held that "*Reed* is helpful in determining whether a chosen venue is unfair or prejudicial to a defendant." *Saavedra, supra,* 223 F.3d at 93. As set forth below, even accepting all the allegations in the Superseding Indictment as true, the venue chosen by the Government to prosecute Mr. Brown is improper under the substantial contacts test.

The first (and arguably most important) of the *Reed* factors strongly militates against venue in the Southern District of New York. Mr. Brown's purported criminal acts would have occurred almost entirely on the West Coast, where the schemes were allegedly devised and executed.

As to the second *Reed* factor, "the 'locus delicti [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (alteration in original) (*quoting Cabrales*, 524 U.S. at 6-7). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* In this task, the Supreme Court has noted that "it is often

-9-

helpful to look to the verbs of a statute in identifying the conduct that constitutes an offense, but the 'verb test' should not be applied 'to the exclusion of other relevant statutory language.'" *Ramirez, supra*, 420 F.3d at 138 (citation omitted).

The locus delicti of the substantive crime charged here, wire fraud – "engaging in a scheme to defraud" and "us[ing] interstate wirings in furtherance of a scheme to defraud" (18 U.S.C. § 1343) – is unrelated to the Southern District of New York. The individuals being defrauded were located in California and Minnesota and the scheme to defraud engaged in by Mr. Brown allegedly occurred in California. Venue thus properly lies in California. Likewise, with respect to the conspiracy counts, any overt acts in furtherance of a conspiracy would have occurred in California.

The third *Reed* factor, the locus of the effect of the criminal conduct, likewise does not point to New York. The effects of the alleged schemes to defraud were felt in California, where most of the purported victims reside – and certainly not in New York. *See In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *3-4 (S.D.N.Y. May 12, 2003) (Southern District of New York an inappropriate venue where "virtually all of the events underlying [the] action occurred in Montana" including "the locus of operative facts," *e.g.*, where the allegedly false reports were prepared and the allegedly fraudulent decisions were made); *see also In re Connetics Secs Litig.*, 2007 WL 1522614, at *6 (S.D.N.Y. May 23, 2007) ("incidental occurrences do not pull the 'center of gravity' of this litigation away from California, where the facts constituting the defendants' alleged fraud took place").

Finally, there is no basis for presuming that the Southern District of New York is a more "suitable" forum in which to try this matter than a district court in California. To the contrary,

-10-

prosecution of this case in this Court would unnecessarily waylay and complicate the factfinding process since all of the key witnesses in this case (for both the prosecution and defense) are – literally – on the opposite side of the country from this Court, which will make the logistics of a trial unnecessarily difficult, costly, and inefficient. Moreover, the coordination of trial preparation and discovery review is inherently more laborious when a defendant and his counsel are in vastly separated locations. Another consideration that should not be discounted is the substantial and unnecessary burden a trial in this Court would place on Mr. Brown and his wife. Requiring Mr. Brown to defend himself in this Court during a lengthy trial, he is not alleged to have engaged in any misconduct here, is entirely inappropriate considering the obvious monetary and logistical issues such a cross-country defense would pose.

As the Second Circuit recognized in *Reed*, there must be some "sense of [venue] having been freely chosen" by the defendant. *Reed, supra,* 773 F .2d at 481. Here, accepting all of the Government's allegations at face value, the only purported ties to New York are the single meeting with Victim-9, which relates only to Count Four; the purported emails to Victim-1 during a period outside the statute of limitation; *Mr. Williams* directing a fraudulent statement from California to Victim-2's counsel in New York; and Mr. Brown's withdrawal of $83 from an ATM in Manhattan. It cannot be said that Mr. Brown chose to act in this district based on the alleged foregoing conduct. Conferring venue in New York based on such minimal and peripheral contacts violates the important venue safeguards afforded the Defendant under the Constitution, Acts of Congress, the Federal Rules of Criminal Procedure, and the applicable precedents of the Second Circuit and this Court. *See United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004) (concluding that defendant had insufficient contacts with the Southern District

-11-

where "the government submit[ted] no evidence showing that defendants directly contacted New York" in committing crime); *United States v. Bezmalinovic*, 962 F. Supp. 435, 437 (S.D.N.Y. 1997) (venue not established where only activities in the district alleged in indictment were not "intended or foreseen by defendant").

The Government failed to establish that the alleged scheme has "substantial contacts" with the Southern District of New York and the *Reed* factors thus weigh in favor of finding no venue in New York.

## II.

## IF THE COURT DENIES THE MOTION, THE DEFENDANT REQUESTS THAT HIS OBJECTION BE PRESERVED

Should the Court deny this Motion, Mr. Brown respectfully requests that such denial be without prejudice and that their venue objection be preserved for purposes of a subsequent motion pursuant to Federal Rule of Criminal Procedure 29 after trial. *See United States v. Szur*, 1998 WL 132942 at *9 (S.D.N.Y. 1998) (denying without prejudice pre-trial motion to dismiss for improper venue and noting that such objection was preserved for renewal under Rule 29).

## III.

## IF THE COURT DENIES THE MOTION, THE DEFENDANT REQUESTS A BILL OF PARTICULARS DETAILING THE GOVERNMENT'S GROUNDS FOR VENUE FOR EACH COUNT

If the Motion is denied, Mr. Brown requests a bill of particulars regarding the details of why venue in New York is proper for each of the Counts so that he may contest the factual basis

-12-

for venue at trial. *See United States v. Wilson*, 2001 WL 798018, at *9 (S.D.N.Y. July 13, 2001) (directing the Government to provide "a bill of particulars describing facts it intends to establish at trial which it claims are sufficient to establish venue in this district"); *Szur, supra*, 1998 WL 132942, at *9 (denying motion to dismiss but ordering Government to provide defendant a bill of particulars detailing the basis of venue in this district).

## IV.

### ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED FOR THE CONVENIENCE OF THE WITNESSES, THE PARTIES, AND IN THE INTERESTS OF JUSTICE

Rule 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." In deciding on a motion under Rule 21(b), courts in this Circuit examine the nine factors set forth by the Supreme Court in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964). *See United States v. Projansky*, 465 F.2d 123, 139 (2d Cir. 1972) (noting that the *Platt* factors are the "proper criteria" a district court should apply in exercise of its discretion under Rule 21(b)). The *Platt* factors are: (1) location of defendants; (2) location of possible witnesses; (3) location of events likely to be in issue; ( 4) location of documents and records likely to be involved; ( 5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *See Platt, supra,* 376 U.S. at 243-44.

In this case, because virtually all of the relevant parties and anticipated witnesses are

located in or near the Southern District of California, transfer to that district is warranted under Rule 21(b) in order to avoid an overly burdensome and unnecessarily expensive trial across the country from where Mr. Brown's allegedly unlawful conduct occurred and from where he works and resides.

### A.    Most of the Anticipated Witnesses Reside in California

Neither the government nor the defendant are expected to call at trial any non-law enforcement witnesses that reside anywhere near the Southern District of New York.  To the contrary, nearly all relevant fact witnesses live outside of New York:

- Victim-2 is a resident of Wyoming with a home in Louisiana and all meetings regarding his film investments took place in California (with subsequent meetings after he had invested taking place in Louisiana and Las Vegas).  He has commenced civil litigation against Mr. Williams, Mr. Brown and others in federal court in the Central District of California.

- Victim 3 lives in California and all dealings with Mr. Brown occurred in California. He has commenced civil litigation against Mr. Williams, Mr. Brown and others in California Superior Court in the County of Los Angeles.

- Victim-4 lives in Minnesota and met exclusively with Mr. Brown in California

- Victims 5 and 6 live in California, dealt with Williams and Brown in California, and were creditors against Mr. Williams in a California bankruptcy proceeding

- Victims 7 and 8 were clients of Mr. Sepalla, who resided in Minnesota and had no contact whatsoever with the state of New York.

- Victim-9 lives in California and is suing Mr. Brown and others in California Superior Court, County of Los Angeles.  In his California lawsuit, Victim-9 alleged venue was proper in

Los Angeles "because the events occurred in [that] county" and, more specifically, in connection with his decision to invest in Special Events Productions that "[m]ost if not all" of his discussions with Mr. Brown and CC-1 "took place in Santa Monica at his office or near the office." (Mack Aff. Exh. A).

  • The only alleged victim on the East Coast, Victim-1, resides in New Jersey.  As noted above, all interactions with this individual took place in 2009-2010, and any charges premised on those interactions is barred by the statute of limitations and by the fact it involved a separate conspiracy that ended when Victim-1 sued Mr. Brown in New York State Court, ultimately reaching a settlement and releasing all his claims in exchange for certain movie rights.  The government has apparently added Victim-1 and his time-barred and released claims in an attempt to create venue in this district, where none lies.

  • Mr. Brown resides in California.

  • Mr. Brown's civil counsel, who is defending against many of the civil lawsuits brought by the purported victims and may testify in this case, is located in California.

  • Mr. Williams resides in California and all his interaction with Mr. Sepalla were in California.

The testimony of these numerous witnesses (most of whom live in California) will likely be the central component of the trial and weighs in favor of a transfer given the lack of connection to the New York venue.

Since none of these anticipated witnesses (except Victim-1), live anywhere near the Southern District of New York, these persons should not be required to undertake the needless expense and burden of traveling to this District to testify at a multi-week trial.  Indeed,

-15-

considering the price of cross-country airfare and hotel rates in New York City, requiring these numerous anticipated witnesses to travel far from their homes to testify in this matter could easily cost several thousands of dollars each. This is an unfair and unnecessary burden to place on dozens of witnesses whose lives will be significantly disrupted or on the defendant, who may end up bearing the costs of the witnesses' travel expenses. This harm could easily be ameliorated by transferring this case to a district near the residences of most of the relevant witnesses. The relatively small number of Government lawyers and agents could much more efficiently and cost-effectively conduct a trial where the large number of witnesses reside, rather than vice versa,

**B.    Trial in the Southern District of New York
       Would Be Unduly Burdensome to Mr. Brown**

As many "judges have recognized, it can be a hardship for a defendant to face trial far away from home." *United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978) (*citing United States v. Johnson*, 323 U.S. 273, 275 (1944)). "It has been stated, therefore, that as a matter of policy, a defendant should ordinarily be tried, whenever possible, where he resides." *Id.* (*citing Hyde v. Shine*, 199 U.S. 62, 78 (1905); *United States v. Cashin*, 281 F.2d 669, 675 (2d Cir. 1960)). In this case, as the Court is aware, Mr. Brown and his wife reside on the west coast. Requiring Mr. Brown to defend himself in this Court during a lengthy trial will impose obvious and significant monetary and logistical burdens on him.

In addition to taking Mr. Brown away from the support of his family and the considerable costs of relocating to New York City for the anticipated long duration of the trial, Mr. Brown would also likely need to relocate to New York in the weeks leading up to trial to prepare with his attorney, extending the length of his absence from his family. In light of the inherently high

legal costs of defending oneself in a complex white-collar criminal trial, Mr. Brown should not simultaneously be forced to incur additional costs by having to establish a temporary residence in New York for close to 2 months. This hardship could easily be avoided if the trial were transferred to the Southern District of California.

Indeed, when prosecutors try cases outside of their home districts, they are routinely granted access to the full resources of the U.S. Attorney's Office in the trial district. Moreover, in this case all of the Rule 16 discovery has been stored in electronic databases, making it equally accessible in the Northern District of California as in this District. Any burden of a transfer on the Government, therefore, is greatly outweighed by the burden trial in this District will impose on the witnesses and the parties.

Further, holding this trial in a District far removed from where all the relevant parties and witnesses are located would also unjustifiably make presentation of Mr. Brown's case more difficult. As the Court is aware, witness lists are ever-changing during trial and Mr. Brown and his counsel could much more easily interview and call to testify unanticipated and anticipated witnesses if the trial were held near where all such witnesses reside. Transferring this case to the Northern District of California would, therefore, eliminate the need for last-minute cross-country flights for witnesses and counsel during trial and in the weeks leading up to the trial.

## C. This Case Should be Transferred in the Interests of Justice

As the Second Circuit has long recognized, "[v]enue is important as a guaranty of the defendant's right to be tried in the vicinity of his criminal activity, and venue requirements are imposed to prevent the government from choosing a favorable tribunal or one which may be unduly inconvenient for the defendant." *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir.),

-17-

*cert. denied*, 392 U.S. 937 (1968); *see also* U.S. Const. art. III,§ 2, cl. 3 (criminal trials shall "be held in the State where the said Crimes shall have been committed"); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . an impartial jury ofthe State and district wherein the crime shall have been committed."). Within this framework, and considering the non-existent (or at best, tangential) connection between Mr. Brown's alleged activity and this District, if dismissal is denied, this case should be transferred to the Northern District of California in the interest of justice. *See Platt, supra,* 376 U.S. at 244 (court must consider the "location of events likely to be in issue" when evaluating a Rule 21(b) request).

**CONCLUSION**

For the foregoing reasons, prosecution of this case in the Southern District of New York would violate Mr. Brown's constitutional right to be tried "in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The alleged crimes do not otherwise have "substantial contacts" with this District and allowing this case to proceed in this Court would thus totally circumvent the important constitutional and procedural safeguards afforded criminal defendants. The Court should grant the Motion and dismiss all counts in the Superceding Indictment. If the Court denies the Motion, defendant requests that the Court order the production of a bill of particulars setting for the basis for venue for each of the five counts and that his venue objections be preserved for a possible Rule 29 motion following trial. In the alternative, defendant requests that the case be transferred to California in the interests of justice.

-18-

Dated: New York, New York
       January 29, 2018

                                        Respectfully submitted,
                                        DOAR RIECK KALEY & MACK


                                        _____/s/_____
                                        Walter Mack
                                        David Rivera
                                        Michael Minnefor
                                        217 Broadway, Suite 707
                                        New York, New York 10007
                                        Tel:+ 1 212 619 3730
                                        Fax: +1 212 962 5037
                                        *Attorneys for Defendant Steven Brown*