1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              16 CR. 90 (AJN)

5   RICHARD DENMAN,

6                  Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        June 23, 2016
9                                       11:10 a.m.

10

    Before:
11
                         HON. ALISON J. NATHAN,
12
                                         District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    MATTHEW JOSEPH LAROCHE
17  JONATHAN REBOLD
         Assistant United States Attorney
18
    FEDERAL DEFENDERS OF NEW YORK INC.
19       Attorneys for Defendant
    BY:  MARK GOMBINER
20
    ALSO PRESENT:  FBI SPECIAL AGENT MELODY SHEN
21                 DANA KRAUSHAR, paralegal
                   HOWARD B. KLEINBERG
22

23

24

25

1          (Case called)

2          THE COURT:  Good morning.  We're here today for

3    sentencing in United States v. Richard Denman.  In preparation

4    for today's proceeding, I've reviewed the following:  There was

5    a waiver of the PSR, but I have received and reviewed the

6    following submissions:

7          I have the defendant's submission, which is dated

8    June 17, 2016.  I have the government's submission, which is

9    dated June 20, 2016.  It contains Exhibits A through E which

10   pertain to the underlying crime to which Mr. Denman has pled

11   guilty.

12         And I am also in receipt of a proposed order of

13   restitution provided by the government, as well as a proposed

14   forfeiture order.

15         Let me confirm, counsel, if there's anything else I

16   should have in front of me for purposes of sentencing.

17         MR. GOMBINER:  No, Judge.

18         MR. LAROCHE:  No, Judge.

19         THE COURT:  And that you've received each other's

20   submissions.

21         MR. LAROCHE:  That's correct.  Before we get going,

22   there is one issue that the parties would like to raise with

23   your Honor.

24         THE COURT:  Go ahead.

25         MR. LAROCHE:  It relates to Mr. Farcy.  I asked

1    Mr. Farcy to step out for this conversation, if it's okay with

2    the Court.  It relates to him speaking today.  Given the nature

3    of the conversation, I think it would be appropriate if he's

4    not here for that, but we'd defer to the Court.

5              THE COURT:  I don't know what the nature of the

6    conversation is.  If Mr. Farcy wants to step out for it, that's

7    fine with me.

8              MR. LAROCHE:  Thank you, Judge.

9              THE COURT:  Thank you, Mr. Farcy.

10             MR. KLEINBERG:  Your Honor, I'm sorry to interrupt.

11   I'm Mr. Farcy's counsel, Howard Kleinberg.  I didn't hear the

12   statement.  I don't know if you'd like me to leave as well.

13             THE COURT:  Your name, sir?

14             MR. KLEINBERG:  Howard Kleinberg with the law firm of

15   Meyer, Suozzi, English & Klein.

16             THE COURT:  Mr. Laroche?

17             MR. LAROCHE:  No objection to him staying, your Honor.

18             THE COURT:  Mr. Gombiner?

19             MR. GOMBINER:  Judge, I certainly have no objection to

20   his lawyer being present.  In fact, I think it's probably

21   advisable that his lawyer should be present, given the nature

22   of my application.

23             THE COURT:  Just a moment.

24             All right.  So Mr. Farcy has stepped outside the

25   courtroom on everyone's request and consent, and his counsel

1    has remained in the courtroom.

2            Mr. Gombiner.

3            MR. GOMBINER:  Yes.  It's my understanding the

4    government seeks to have Mr. Farcy testify pursuant to 18 U.S.

5    Code, Section 3771 as a purported lawful representative of the

6    victims.  Judge, it's our position that Mr. Farcy is the

7    antithesis of a lawful representative.  I need to give the

8    Court a little background.

9            Mr. Farcy at least claims to be a relative of one of

10   the heirs of the estate.  In some time 2011, he met Mr. Denman

11   in New York and, after learning that Mr. Denman is a tax

12   attorney specializing in international tax matters, asked

13   Mr. Denman if he would help with the distribution of the

14   estate.

15           What transpired is that Mr. Denman was engaged by the

16   administrator of the estate to be special counsel to the

17   estate, but Mr. Farcy was not just a disinterested individual

18   who was trying to help find a lawyer for the estate.

19           Over the next couple of years, Mr. Farcy personally --

20   it's reflected in Exhibit E, page 6, of the government's

21   sentencing letter.  Mr. Farcy received from the estate the sum

22   of $156,000.

23           Now, this is an estate that's total value was about

24   $1.4 million.  Mr. Farcy personally benefited from this estate

25   far more than any of the heirs did.  The government's chart

1    shows that the most money any of the heirs received from the

2    state is $59,000.  Counsel that Mr. Farcy hired here in the

3    United States, Mr. Kleinman's and another firm, received

4    another $170,000.  So between Mr. Farcy and the lawyer he

5    hired, there was about $320,000 disbursed to him and the lawyer

6    he hired.

7            Judge, on its face, I think there is something

8    fraudulent about someone obtaining $156,000 of a $1.4 million

9    estate allegedly to help distribute the estate.

10            I mean, first you would think that that's the

11   responsibility of the administrator of the estate.  But, in any

12   event, Mr. Farcy is not a professional of any sort.  He's not a

13   lawyer.  He's not an accountant.

14            THE COURT:  Let me ask you something, Mr. Gombiner,

15   just to cut to the chase a bit.

16            So if Mr. Farcy is a lawful representative of the

17   victims, he is entitled to testify; correct?  Entitled to speak

18   here at the sentencing proceeding.

19            MR. GOMBINER:  Pursuant to the terms of the statute,

20   yes.

21            THE COURT:  So you want me to come to some legal and

22   factual conclusion that he is somehow not a legal

23   representative of the estate based on what you've not put in

24   front of me prior to today but what you're just telling me now?

25   I should determine on the record that he's engaged in a fraud

1    of some kind?

2          MR. GOMBINER:  Judge, I mean, I have to say I was

3    somewhat astonished yesterday morning, because it was the first

4    indication I had that it was going to be an issue.  I was

5    somewhat astonished to get a letter from the government stating

6    that they intended to call Mr. Farcy as a representative.

7          I wasn't able to submit a letter because I wasn't able

8    to speak to Mr. Denman.  Mr. Denman was very indisposed

9    yesterday.  So I wasn't able to speak to him, and I didn't want

10   to do anything about this until I had spoken to Mr. Denman.

11         I had about 24 hours' notice that Mr. Farcy was being

12   proffered as a lawful representative of the victims.  There

13   wasn't anything coming that any of the victims actually had

14   authorized him to speak.  That's just the government's say-so.

15         At the very least, he's going to be up there talking

16   about the victims.  I would ask, if he is going to testify,

17   that we have some voir dire first as to whether or not he is a

18   lawful representative.

19         I think on its face it is fraudulent for somebody to

20   have been paid $156,000.  The government's position is

21   Mr. Denman's work on the estate is worth nothing.  He's not

22   getting credit for any of the work he did.

23         And yesterday Mr. Farcy, who has never appeared in

24   court -- he's not an attorney.  He didn't do anything.  I don't

25   know what he could do for $156,000 that would entitle you to --

1          THE COURT:  Just to repeat the question.  Therefore,

2   your application to me is to make a factual and legal

3   conclusion that he's engaged in some kind of fraud in order to

4   be able to prohibit his testimony?

5          MR. GOMBINER:  Judge, I'm not really asking the Court

6   to make any conclusions.  I'm just asking the Court to bar him

7   from testifying.

8          THE COURT:  But we started this conversation with you

9   saying if he's a legal representative, I have to let him

10  testify.

11         MR. GOMBINER:  I don't think you have to make any

12  findings saying that he committed fraud or anything.  Just say

13  he can't testify.  That's all I'm asking.

14         THE COURT:  Mr. Laroche.

15         MR. LAROCHE:  Your Honor, we obviously disagree

16  completely with the characterization of Mr. Farcy.  I think, as

17  your Honor said, he is a legal representative of the heirs at

18  this proceeding.

19         THE COURT:  What's the basis for that?

20         MR. LAROCHE:  That's based on a couple of things.

21  One, we've spoken with him extensively about those things.

22  Second, he has a signed power of attorney from the heirs that

23  he can represent their interests here -- I believe that power

24  of attorney was actually produced in discovery in this case --

25  and also on discussions with Mr. Kleinberg that I've had over

1    the course of this case.  So it's based on those things.

2         I don't think a voir dire is necessary for him to say

3    essentially that.  Based on those representations and our

4    investigation, we feel comfortable that he is qualified as the

5    legal representative of the heirs in this proceeding.

6         Now, with respect to the allegations of his wrongdoing

7    in this case, I completely disagree.  If I can just start with

8    the $170,000 that Mr. Gombiner attributes to Mr. Farcy.

9         That was paid to the civil attorney who distributed it

10   to the heirs because that was money left over in Fiduciary 1's

11   accounts that belonged to the heirs.  So it didn't go to

12   Mr. Farcy.  That went back to the heirs.

13        Now, with respect to the $150,000 or so that Mr. Farcy

14   is represented to getting on these sheets, Mr. Farcy received

15   the $150,000 which the heirs were aware of and which were used

16   to pay, among other things, the civil attorney that was used to

17   bring a case against Mr. Denman and Fiduciary 1 so they could

18   try to recover their funds.

19        We also feel comfortable that he wasn't involved in

20   the fraud based on a couple of other things.  This has been a

21   long investigation.  Among other things, we've gotten all of

22   Mr. Denman's emails, which include significant correspondence

23   with Mr. Farcy.  None of those emails suggested to the

24   government that Mr. Farcy was somehow acting improperly on

25   behalf of the heirs.

1          Ultimately, Mr. Farcy was the only one in the

2   United States who could represent the heirs' interests.  We

3   don't believe that anything he did was improper.  He is the

4   legal representative of the heirs, in our view, and should be

5   allowed to testify or at least speak on behalf of the heirs at

6   this sentencing.

7          THE COURT:  Anything further, Mr. Gombiner?

8          MR. GOMBINER:  Well, Judge, only that it doesn't seem,

9   based on what the government said, that there is any indication

10  that any of the heirs are aware that Mr. Farcy is intending to

11  speak as their representative.

12         THE COURT:  Mr. Laroche proffered a power of attorney

13  to represent their interest in this matter.  Is that something

14  you've seen, or no?

15         MR. GOMBINER:  I'll take Mr. Laroche's word for it.  I

16  don't recall personally, but I'm not disputing that.

17         THE COURT:  Isn't that responsive to what you just

18  said?

19         MR. GOMBINER:  No.  I don't think that that

20  indicates -- I mean, a power of attorney doesn't --it

21  contemplates that he has the power to do anything on their

22  behalf.  I think it would be in connection with the estate.

23         But I also, Judge, in terms of the power of attorney,

24  I question whether the heirs were aware that he was personally

25  receiving far more money than they were receiving.

1    I don't have any -- I mean, obviously, the record is

2    not entirely developed on this point because it wasn't -- I

3    mean, my intention was to appear here at sentencing and to talk

4    about Mr. Denman, not talk about --

5              THE COURT:  I'll tell you what, Mr. Gombiner.  Since

6    you've indicated you were given notice of this just yesterday

7    and didn't have a chance to speak to Mr. Denman in advance, if

8    you'd like an adjournment -- as I sit here, I don't see any

9    basis to not allow his statement as a victim's statement.  But,

10   if you want an adjournment to put argument and authority in

11   front of you, I'm happy to do that.

12             MR. GOMBINER:  Can I consult with Mr. Denman?

13             THE COURT:  Of course.

14             (Pause)

15             MR. GOMBINER:  Judge, Mr. Denman does not want his

16   sentencing postponed.  Anyway, we strenuously object to

17   Mr. Farcy testifying.  At the very least, we would ask -- if I

18   can't inquire, we would ask the Court to inquire whether

19   in fact any of the heirs are aware of his intentions, one, to

20   testify; and two, if they're aware of the amount of money he

21   received on his own behalf from the estate.

22             THE COURT:  Mr. Laroche?

23             MR. LAROCHE:  No, your Honor.  For a variety of

24   reasons, I think questioning Mr. Farcy about money he received

25   from the estate -- those are a lot of issues I don't think are

1   appropriate at all for someone who is just here to speak on

2   behalf of the victims.

3            THE COURT:  Are the victims aware of his speaking on

4   their behalf today?

5            MR. LAROCHE:  Just one second.

6            (Pause)

7            MR. LAROCHE:  I just wanted to confirm.  Yes.  It's

8   our understanding that he has called them and spoken to at

9   least several of the victims have passed away, three of the

10  five.  But it's our understanding that he's spoken by phone to

11  at least one of them to represent that he was going to speak on

12  their behalf today.

13           THE COURT:  Well, as I say, I have no basis in front

14  of me now to do anything but allow, on the representations that

15  have been made, Mr. Farcy to speak as a representative of the

16  victims who are unable to be here today.

17           And, having given the defense an opportunity for an

18  adjournment to put something in front of me to allow me to

19  reach some different conclusion, but that opportunity has been

20  foregone.  So I will allow Mr. Farcy to make a statement on

21  behalf of the victims as part of the sentencing proceeding.

22           Turning to the sentencing, we'll begin with the

23  sentencing guideline calculation.  As counsel is aware, I am no

24  longer required to follow the United States Sentencing

25  Guidelines, but I am still required to consider the applicable

Case 1:16-cr-00469-KMW Document 294-1 Filed 08/02/18 Page 21 of 30

1    guidelines in imposing sentence unless therefore accurately

2    calculates the sentencing guideline range.

3           Here the stipulated guideline sentence is 12 months'

4    imprisonment, and that is a calculation using the November 1,

5    2015, edition of the sentencing guidelines.  With an offense

6    level of 19, a criminal history category of I, that would

7    produce a guideline range of 24 to 30 months.

8           However, because the statutory maximum sentence is 12

9    months, the applicable guideline range in the plea agreement

10   containing the stipulated guidelines is a guideline sentence of

11   12 months.

12          Have I accurately described the agreement as to the

13   guideline range, and is there any objection as to that

14   conclusion?

15          MR. LAROCHE:  No objection.  That's correct,

16   your Honor.

17          MR. GOMBINER:  No, your Honor.

18          THE COURT:  Thank you.  Based on the parties'

19   agreement and the absence of objection and my independent

20   evaluation of the sentencing guidelines using the November 1,

21   2015, edition of the sentencing guidelines, I do find that the

22   offense level is 19, the criminal history category is I.

23          That would otherwise produce a guideline range of 24

24   to 30 months.  However, because of the statutory maximum

25   sentence here, the guideline sentence is 12 months'

1    imprisonment.

2            The plea agreement also indicated that the parties

3    would not seek an upward or downward departure within the

4    guideline system.  Obviously, I will hear you as to a variance.

5            Am I correct that the parties agreed not to seek an

6    upward or downward departure within the guideline system?

7            MR. LAROCHE:  That's correct.

8            MR. GOMBINER:  Yes, it is.

9            THE COURT:  Nevertheless, I've considered whether

10   there is an appropriate basis for a departure from the advisory

11   range within the guideline system.  I did not find any grounds

12   warranting a departure from the guidelines.  As noted, the

13   parties are free to argue, and I'm happy to hear views as to

14   what is a variance and what is a reasonable sentence in this

15   case.

16           Mr. Laroche.

17           MR. LAROCHE:  Your Honor, the government believes that

18   a guideline sentence is appropriate in this case.  The

19   defendant stole hundreds of thousands of dollars from five

20   elderly heirs in France.  The defendant was hired by the

21   administrator of this estate to oversee the distribution of the

22   estate.

23           Approximately $450,000 of the estate was to be held in

24   escrow for a period of three years.  The remainder of the

25   estate, approximately $800,000, was to be distributed to the

1    heirs.  That's a $1.3 million estate.

2           Instead of distributing the money to the heirs, the

3    defendant stole it.  The defendant spent that money on his

4    relatives, on his son's tuition.  And during the time that he

5    was stealing that money, he was lying to the heirs.

6           I set forth in my sentencing submission a number of

7    communications that Mr. Denman sent.  I just want to highlight

8    a couple because I think they show how egregious his conduct

9    was.

10          On December 5, 2012, one of the heirs emailed Denman

11   asking for $900.  Is it possible to transfer me $900?

12          Denman responded by email to the heir, I do not

13   understand this email.  We are not bankers.  Previous advances

14   of $19,000 were made.  We do not have full compliance IDs from

15   two perspective heirs.  Because of this problem, we are in

16   penalty environment with the IRS and ask USA authorities.

17          Then on December 10, 2012, Denman had sent an email to

18   Mr. Farcy complaining that the heirs had not completed their

19   required documentation.  Among other things, Denman states, I

20   regret having to make this most inconvenient trip to France to

21   meet with the heirs.  Then he says the heirs are dissipating

22   their own legacy.  I've never seen anything like it.

23          The truth was the only person who was dissipating,

24   taking the legacy of the heirs, was Mr. Denman.  Over that

25   time, as I said, he spent money on things that clearly had

1    absolutely nothing to do with the heirs.

2           This is set forth in Exhibit E, but just to take a

3    couple examples, $228,000 went to his neighbor.  $140,000 were

4    taken out in cash withdrawals.  $106,000 went to his mother.

5    $28,000 went to pay his rent.  Another $25,000 went to pay for

6    his life insurance.  It goes on and on and on and on.

7           Mr. Denman's conduct, in the government's view -- I

8    think this is a strong word but an appropriate one -- was

9    disgraceful.  These heirs were elderly individuals in France

10   who couldn't represent their own interests here, and they

11   trusted Mr. Denman to use his apparent expertise to do so.

12          He didn't.  He decided to steal their money over an

13   extensive period of time, and he lied to them while he was

14   doing so.  We think that conduct is egregious.  We think that

15   conduct shows how serious the crime was that he committed.

16          I just note two more things for the record.  One is

17   the proposed restitution order and, second, the proposed

18   forfeiture order.  It's my understanding that the defendant

19   does not object to the amount listed in the proposed

20   restitution order.

21          To be clear on that amount, it's approximately

22   $862,000.  That amount includes the money directly that Denman

23   took himself and also the money that was taken out of Fiduciary

24   1's accounts that related to the heirs as well.  That's the

25   $862,000.  That amount does not include any money that was --

1          THE COURT:  The amount indicated is $864,783.12.

2          MR. LAROCHE:  That's correct, your Honor.  That amount

3     does not include any money that was paid to the heirs as

4     "advances."  It doesn't include any of the $170,000 that the

5     heirs received back.  It does not include the $156,000 that are

6     attributed to Mr. Farcy that we have spoken about earlier.  It

7     does not include any of those figures.

8          The $864,000 or so is the money directly related to

9     Mr. Denman stealing the heirs' assets.  So the government would

10    ask that the Court enter the proposed restitution order.

11         The proposed forfeiture order, I've spoken to

12    Mr. Gombiner before we came to court today, and I think the

13    parties would request a little bit more time to work on the

14    language.

15         The forfeiture order is complicated by the fact that

16    the government is seeking Mr. Denman to satisfy the forfeiture

17    order with a portion of his life insurance policy.

18         I think that raises a few more complicated issues that

19    we're trying to work through, but I think at this point, we're

20    ready to enter the restitution order, and we'll update the

21    Court as soon as possible about the forfeiture order.

22         THE COURT:  Were you going to sit down?

23         MR. LAROCHE:  I'll sit down.

24         THE COURT:  I think some response from the government

25    is required as to how to take account of Mr. Denman's health

1    issues and how to craft a reasonable sentence in the whole

2    context of this case.

3              MR. LAROCHE:  Understood, your Honor.  As the Court is

4    well aware, the government credits that Mr. Denman is in fact

5    very sick.  As Mr. Gombiner's submission notes, that a sentence

6    in this case could be satisfied by probation.

7              I think that given the nature of his health concerns

8    and my discussions with BOP officials, I think it would be

9    extremely difficult for him to have any sort of incarceratory

10   sentence in a BOP prison facility based on my discussions.

11             So I think that a sentence can be fashioned that would

12   involve some sort of -- involve a sentence beyond just the

13   forfeiture and restitution but take into account his

14   significant health issues.

15             THE COURT:  Just to drill a little bit on those

16   options, there are fine options, there are home detention

17   options, and the like.  What's the government's view?

18             MR. LAROCHE:  I think home detention would be

19   appropriate in this case.  My understanding is that

20   Mr. Gombiner will argue pretty vigorously against such a

21   sentence.

22             I think there must be some sort of sentence in this

23   case that reflects the seriousness of the conduct beyond a

24   forfeiture and restitution order, which may never be satisfied

25   based on his assets.

1        THE COURT:  And based on those assets, is there any

2   point in imposing a fine?

3        MR. LAROCHE:  No, your Honor.

4        THE COURT:  Thank you, Mr. Laroche.

5        MR. LAROCHE:  You're welcome.

6        THE COURT:  Let me hear from Mr. Farcy.

7        Mr. Farcy, you may step up to the podium.  It is my

8   understanding you are here on behalf of the victims in this

9   case as their legal representative.

10        MR. FARCY:  That is correct, your Honor.

11        THE COURT:  Go ahead.

12        MR. FARCY:  First I want to thank you for giving me

13   the opportunity to read this statement.  There is no doubt the

14   victims in this case were prayed upon because they were old,

15   sick, and powerless.

16        These are the people we're supposed to protect the

17   most in our society, even more so when you are an officer of

18   the court, like the offender, Richard Denman.

19        In most countries and jurisdictions in the world, this

20   case would have certainly fallen through the cracks.  But not

21   in America and not in this district where even little old

22   ladies of small means and who live in a far-away land are

23   afforded the justice they deserve.

24        On behalf of the victims, I would like to thank the

25   two legal counsel who assisted in civil court, Howard Kleinberg

1    and Jack Seitz, the office of the federal prosecutor, Catherine

2    Riley, and more specifically, Matthew Laroche and Jonathan

3    Rebold who worked very hard on the victims' behalf.

4          We would like to thank the Federal Bureau of

5    Investigation for its swift and professional action.  Last but

6    not least, the victims want to express their deep gratitude to

7    Special Agent Melody Shen of the FBI who understood quickly the

8    maliciousness of this crime and who made sure it did not remain

9    unpunished.

10         After living with this case for many, many years, we

11   can state with certainty that the world is a better and safer

12   place because of the hard work of these dedicated government

13   employees, and we really mean that.

14         When it comes to the convicted offender, Richard

15   Denman, he personally met with these old folks in their home.

16   One of them was blind and in a wheelchair.  How could you?  It

17   is sad and tragic that an educated man with a privileged

18   background would resort to fleecing such innocent and kind

19   people.

20         He used tricks and lied to gain their trust in order

21   to rob them.  Once he committed his fraud, he resorted to

22   intimidation and bully tactics to scare his victims away.

23         Well, today I have a message from my 104-year-old

24   grandmother who was a recipient of his threats and coercive

25   practices.  She wanted you to know that you never scared her

1   away because my grandmother knew all along that a bully is

2   in fact a coward.

3           So stop blaming others.  Stop blaming the system.

4   Just take it like a man.  You have only yourself to blame.

5           THE COURT:  All right.  Thank you.

6           MR. FARCY:  Thank you, your Honor.

7           THE COURT:  Mr. Gombiner.

8           MR. GOMBINER:  Thank you, Judge.

9           First I think we've already discussed Mr. Farcy.  So I

10  won't comment further on his remarks.

11          THE COURT:  Okay.

12          MR. GOMBINER:  Judge, as I think the government itself

13  recognizes, Mr. Denman's medical condition is extremely grave.

14  I mean it's been very challenging presenting him in this case

15  because of his medical issues, which encompass some

16  psychological issues as well.

17          It's difficult for me to -- other than saying that

18  incarceration is definitely not appropriate, I'm not really

19  certain what sentence to propose that would be sufficient but

20  not greater than necessary.

21          Mr. Denman is essentially dealing with problems that,

22  unfortunately, outstrip the powers of the criminal justice

23  system.  I've counseled against the sense of home confinement

24  primarily because of the difficulties we've already experienced

25  in trying to administer that kind of confinement.  It's not

1   that Mr. Denman exactly is going out dancing at night.  In any

2   event, he basically is confined to his home.

3            THE COURT:  What are the difficulties?

4            MR. GOMBINER:  Judge, it's just that on home

5   confinement, every time you have to have like an appointment or

6   something, a doctor's appointment or something, you have to

7   like clear it with the pretrial services.  It's just a

8   cumbersome process.

9            It also involves the use of electronic monitoring that

10  creates additional discomfort for Mr. Denman.  It also creates

11  additional problems with certain medical procedures when the

12  monitor has to be removed.

13           I don't want to like overstate the case.  It's not

14  that it's absolutely impossible.  I would be not candid to say

15  that.  I'm just not sure really what additional purpose is

16  serves.

17           This case has been -- Mr. Denman has already been

18  punished quite a bit.  He was shackled with leg irons when he

19  was in a hospital bed when he was first arrested.

20           He has had a very hard time dealing with the

21  allegations.  It's been very -- his family have not been

22  particularly supportive.  They've made clear to him how ashamed

23  they are of his conduct.

24           I do think a sentence of probation is warranted.  I

25  would just urge the Court to consider what added value a term

1  of home confinement adds.  You know, at some point, I'm just

2  going to have to leave it to the Court's discretion.

3          There is no magic answer to a situation like this just

4  because -- I mean, there are some situations in life where a

5  courtroom is just not the venue to really address.

6          When you've got the kind of medical conditions

7  Mr. Denman has, this is, unfortunately, one of those

8  situations.  I just don't think that there is any sentence that

9  the Court can impose that is really going to get to the core of

10  the matter, which is the very, very grave medical condition

11  that Mr. Denman has.

12          We didn't attach -- we've got thousands of pages of

13  medical records for him that do support all the various

14  conditions we listed in our sentencing letter.

15          I think, when you read that list, you're seeing a

16  situation that is -- that that kind of punishment is well

17  beyond anything the criminal justice system has in mind.

18          So I would ask the Court to impose a sentence of

19  probation without a term of home confinement.  That would be my

20  recommendation.  Thank you.

21          THE COURT:  Thank you.

22          Mr. Denman, you have no obligation to make a

23  statement, but if you'd like to, you may do so now, sir.  Would

24  you like to?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Just pull up the microphone to him.

2          Whenever you're ready.

3          THE DEFENDANT:  I was informed by a sick neighbor that

4     the FBI and the person of Ms. Shen, who sits here today, keeps

5     looking at me -- it seems a bit strange -- was asking about my

6     whereabouts.

7          I was in the European country of Poland trying to get

8     a transplantation.  I came back immediately.  I was suffering

9     in Poland from pneumonia.  I went to Belleview Hospital, and

10    Ms. Shen came in -- and I wish her no ill will.  I'm way beyond

11    that.

12         She shackled me to the bed.  I am incontinent today.

13    Then my old-time family lawyer, who sits over there, came, and

14    Ms. Shen disallowed him a meeting with me.

15         I say one thing to try to conclude.  I have done many

16    good things in my life.  I always tell young lawyers never hold

17    money.  Never.  Because that's the biggest problem in the world

18    for a lawyer is holding money.

19         Now, if this was about money, why don't you go to the

20    fiduciary's insurer?  So I had many problems in my life, and I

21    have shamed my family.  I'm a Yale University graduate.

22         My mathematical skills are second to none.  My left

23    brain doesn't work anymore, but my right brain, which does

24    mathematics, works very well.

25         I am trying to figure out how to make restitution to

1    these people.  Now, Mr. Farcy, when he's here, he doesn't talk

2    about Collette Veron, whose husband, Roger, is blind.

3         THE COURT:  Thank you, Mr. Denman.  You said that was

4    your concluding point?

5         THE DEFENDANT:  Yes, ma'am.

6         THE COURT:  Thank you, Mr. Denman.

7         THE DEFENDANT:  Thank you, ma'am.

8         THE COURT:  Anything else, counsel?  Is there any

9    reason sentence should not be imposed at this time?

10        MR. LAROCHE:  No, your Honor.  Thank you.

11        MR. GOMBINER:  No.

12        THE COURT:  As I've stated, the guideline range

13   applicable to this case is 12 months' imprisonment.  Under the

14   Supreme Court's decision in Booker and its progeny, the

15   guideline range is only one factor that the Court must consider

16   in deciding the appropriate sentence.

17        I'm also required to consider the other factors set

18   forth in 18 U.S. Code, Section 3553(a).  These include the

19   nature and circumstances of the offense and the history and

20   characteristics of the defendant, the need for the sentence

21   imposed to reflect the seriousness of the offense, to promote

22   respect for the law, and to provide just punishment for the

23   offense, to afford adequate deterrence from criminal conduct,

24   to protect the public from further crimes of the defendant, and

25   to provide the defendant with needed education or vocational

1    training, medical care, or other treatment.

2              I am to take into account the kinds of sentences

3    available, the guideline range and any pertinent policy

4    statement, the need to avoid unwarranted sentence disparities,

5    and the need to provide restitution to any victims of the

6    offense.

7              I am required to impose a sentence sufficient but no

8    greater than necessary to comply with the purposes I've just

9    described.

10             I have given substantial thought and attention to the

11   appropriate sentence in this case.  In light of the 3553(a)

12   factors and the appropriate purposes of sentencing as reflected

13   in that statute.

14             The government recognizes, as I think that it must,

15   that a term of imprisonment here would not be an appropriate

16   sentence.  I agree with that concession.  I can't send

17   Mr. Denman to prison in light of his very serious health

18   issues.

19             That conclusion is buttressed by his lack of prior

20   criminal history, the fact that he pled guilty here.  He is in

21   a dire health condition.  Both mental and physical health

22   issues prevent the Court's ability to send him to a term of

23   imprisonment.

24             But for those health conditions, certainly a term of

25   imprisonment would be appropriate, and my conclusion as to the

1   nonincarceratory nature of the sentence I will impose should

2   not diminish in any way my view that Mr. Denman has committed a

3   very serious offense, and I certainly have great sympathy for

4   the victims who are also elderly, are also in poor health, some

5   of whom who have now died, given the length of time that this

6   matter has proceeded, who were swindled, cheated, lied to by

7   Mr. Denman out of what was rightfully theirs and through fraud

8   and lies.

9          It is disgraceful.  It is heartbreaking to know that

10  they faced this conduct and suffered as victims as a result

11  crimes like these.  Crimes like Mr. Denman's do deserve

12  punishment to reflect the seriousness of the offense, to

13  provide just punishment for the offense, and to deter

14  Mr. Denman and certainly others from engaging in this kind of

15  truly despicable fraud.

16         To meet those purposes here, I will sentence

17  Mr. Denman to a six-month probationary term, which will include

18  conditions of home confinement.

19         I recognize that this will be a burden on him, but

20  it's meant to be a burden.  Punishment is meant to be a

21  restriction of freedom in order to meet the purposes of

22  punishment.  So I am imposing that here.

23         And I will enter the proposed restitution order and

24  require that restitution, consistent with the order, be made.

25  Let me formally state then the sentence I intend to impose.

1          It is the judgment of this Court that Mr. Denman be

2    sentenced to a six-month period of probation.  During that term

3    of probation, the standard conditions of probation shall apply.

4          In addition, Mr. Denman will be subject to the

5    following mandatory conditions:  He will not commit another

6    state or federal crime.  I don't have a PSR.

7          Let me state that as a special condition with respect

8    to home confinement, that he will comply with conditions of

9    home confinement for the period of six months under the strict

10   supervision of the probation department.

11         I would propose this commence -- is there any request

12   as to when it commences?  Immediately or within 30 days?

13         MR. GOMBINER:  I think if we can just have it commence

14   immediately, Judge, given Mr. Denman's condition.  I think that

15   would be an excellent idea.

16         THE COURT:  All right.  To commence immediately.

17   During this time, Mr. Denman will remain in his residence and

18   will not leave except as necessary for medical-related issues

19   and with the approval of the probation department.

20         I will also require as a special condition that the

21   probation officer have access to any and all requested

22   financial information.  The defendant will not incur any new

23   credit charges or open additional lines of credit without the

24   approval of the probation office.

25         I am waiving the mandatory drug testing condition

1     because I see no basis to conclude that there will be substance

2     abuse issues.

3             It's further the judgment of this Court that the

4     defendant pay restitution as indicated in the order of

5     restitution in the amount of $864,783.12.  I will waive the

6     interest under 18 U.S. Code, Section 3664(f)(3) in light of the

7     financial condition that has been discussed.

8             I am imposing a mandatory special assessment of $25

9     which shall be due immediately.  With respect to forfeiture,

10    the government has requested that I delay imposition of

11    forfeiture as issues are resolved.

12            Mr. Gombiner, is that correct?

13            MR. GOMBINER:  Yes, your Honor.

14            THE COURT:  I will be ordering forfeiture representing

15    the proceeds obtained, directly or indirectly, as a result of

16    Mr. Denman's criminal activity.  But I will wait for the

17    proposed forfeiture order.

18            Let's set a date for that, Mr. Laroche.

19            MR. LAROCHE:  I propose two weeks, your Honor.  We

20    should have that resolved by then.

21            THE COURT:  So I'll see that within two weeks if

22    there's agreement.  If not, you'll put in your differing views.

23            Are there any other requests or concerns regarding the

24    terms of probation?

25            MR. LAROCHE:  No, your Honor.

1              MR. GOMBINER:  No, Judge.

2              THE COURT:  All right.  I think I did say, but as

3      mandatory conditions, Mr. Denman will not commit another

4      federal, state, or local crime, shall not illegally possess a

5      controlled substance, shall not possess a firearm or

6      destructive device.

7              I am waiving the fine because I don't believe

8      Mr. Denman has the ability to pay the fine, and I am concerned

9      it would otherwise interfere with his restitution payments.

10             Does either counsel know of any legal reason why the

11     sentence shall not be imposed as stated?

12             MR. LAROCHE:  No, your Honor.

13             MR. GOMBINER:  No, Judge.

14             THE COURT:  The sentence as stated is imposed.  I do

15     find the sentence is sufficient but not greater than necessary

16     to satisfy the sentencing purposes that I've described earlier.

17             Mr. Denman, you must comply strictly with your terms

18     of probation.  Failure to do so may require you to face

19     additional punishment, including the possibility of

20     imprisonment.

21             Mr. Laroche, are there any remaining counts or

22     underlying indictments that need to be dismissed at this time?

23             MR. LAROCHE:  Yes, your Honor.  The government moves

24     to dismiss the underlying indictment.

25             THE COURT:  That application is granted.  The

1    underlying indictment is dismissed.

2          Mr. Denman, I see no basis for an appeal, but I am

3    required to inform you of your appellate rights.  To the extent

4    you have not given up your right to appeal your conviction and

5    sentence through your plea of guilty and the agreement that you

6    entered into with the government in connection with that plea,

7    you have the right to appeal.

8          If you're unable to pay the costs of an appeal, you

9    may apply for leave to appeal in forma pauperis, which means,

10   as you know, without payment by you.  The notice of appeal must

11   be filed within 14 days of the judgment of conviction.

12          Counsel, is there anything else I can address at this

13   time?

14          MR. LAROCHE:  No, your Honor.  Thank you.

15          MR. GOMBINER:  No, Judge.

16          THE COURT:  All right.  Thank you.

17          Mr. Denman, good luck to you, sir.  We are adjourned.

18          THE DEFENDANT:  Thank you, your Honor.

19          (Adjourned)

20

21

22

23

24

25